**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Todd R. Snyder, as Plan Administrator for the Terraform Labs Pte. Ltd., et al., each Post Effective-Date Debtor, and the Wind Down Trust,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Jane Street Group, LLC; Jane Street Capital, LLC; Bryce Pratt; Robert Granieri; Michael Huang,<br><br>　　　　Defendants. | Case No.: 1:26-cv-01536-DEH<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................................................ii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................................... 4

    A.    Terraform Labs, UST, and LUNA ................................................................... 4

    B.    Jane Street's Investments in UST and LUNA ................................................. 5

    C.    Jane Street's May 2022 Trading .......................................................................7

    D.    The Aftermath of Terraform's Collapse ......................................................... 11

ARGUMENT ............................................................................................................................... 12

    I.    Plaintiff's Insider Trading Claims (Counts One Through Nine)
        Fail ............................................................................................................................ 12

        A.    Plaintiff's Insider Trading Claims Fail as to the May 7
            Sales ................................................................................................................ 13

        B.    Plaintiff's Insider Trading Claims Fail as to the May 8–13
            Trades .............................................................................................................. 18

        C.    Plaintiff's Insider Trading Claims on Behalf of Terraform
            and LFG Independently Fail for Lack of Reliance ........................................ 22

        D.    Plaintiff's Insider Trading Claims Fail to the Extent That
            They Seek to Recover for Non-Contemporaneous Trades ............................. 23

    II.    Plaintiff's Market Manipulation Claims (Counts Ten Through
        Fifteen) Fail ........................................................................................................... 24

    III.    Plaintiff's Unjust Enrichment Claims (Counts Sixteen Through
        Eighteen) Fail ......................................................................................................... 27

    IV.    Terraform and LFG's Claims Are Barred by Their Own
        Wrongdoing ............................................................................................................ 28

    V.    Plaintiff's Exchange Act and CEA Claims Are Impermissibly
        Extraterritorial ...................................................................................................... 29

CONCLUSION ............................................................................................................................ 30

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*60223 Tr. v. Goldman, Sachs & Co.*,
540 F. Supp. 2d 449 (S.D.N.Y. 2007)................................................................................. 22

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012)................................................................................................. 30

*Altimeo Asset Mgmt. v. Qihoo*,
663 F. Supp. 3d 334 (S.D.N.Y. 2023)................................................................................. 16

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) ............................................................................................... 12

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)................................................................................................. 26

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019)................................................................................. 18

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)....................................................................................................... 28–29

*Brodzinsky v. FrontPoint Partner LLC*,
2012 WL 1468507 (D. Conn. Apr. 26, 2012)..................................................................... 23

*Chiarella v. United States*,
445 U.S. 222 (1980)............................................................................................................ 20

*Citibank, N.A. v. K-H Corp.*,
968 F.2d 1489 (2d Cir. 1992)........................................................................................ 16, 21

*City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*,
2024 WL 4349289 (S.D.N.Y. Sep. 30, 2024)..................................................................... 17

*Dfinity Found. v. N.Y. Times Co.*,
702 F. Supp. 3d 167 (S.D.N.Y. 2023)................................................................................... 6

*Dirks v. SEC*,
463 U.S. 646 (1983)............................................................................................................ 21

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir. 1987).......................................................................................... 13

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994).............................................................................................. 22

*Gordon v. Sonar Cap. Mgmt. LLC*,
  962 F. Supp. 2d 525 (S.D.N.Y. 2013)........................................................................ 16, 18

*Hesse v. Godiva Chocolatier, Inc.*,
  463 F. Supp. 3d 453 (S.D.N.Y. 2020)............................................................................. 28

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995)....................................................................................... 11, 29

*IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*,
  783 F.3d 383 (2d Cir. 2015)............................................................................................ 14

*In re Amaranth Nat. Gas Commodities Litig.*,
  587 F. Supp. 2d 513 (S.D.N.Y. 2008)..................................................................... 25–26, 27

*In re Amaranth Nat. Gas Commodities Litig.*,
  730 F.3d 170 (2d Cir. 2013)....................................................................................... 25, 27

*In re Archegos 20A Litig.*,
  156 F.4th 108 (2d Cir. 2025) ................................................................................... *passim*

*In re Bernard L. Madoff Inv. Sec.*,
  721 F.3d 54 (2d Cir. 2013).............................................................................................. 29

*In re Commodity Exch. Inc., Gold Futures and Options Trading Litig.*,
  328 F. Supp. 3d 217 (S.D.N.Y. 2018).............................................................................. 24

*In re Genentech, Inc. Sec. Litig.*,
  1989 WL 201577 (N.D. Cal. Dec. 11, 1989)................................................................... 23

*In re Grumman Olson Indus., Inc.*,
  329 B.R. 411 (S.D.N.Y. 2005)......................................................................................... 29

*In re New Energy Sys. Sec. Litig.*,
  66 F. Supp. 3d 401 (S.D.N.Y. 2014)................................................................................ 16

*In re Platinum & Palladium Commodities Litig.*,
   828 F. Supp. 2d 588 (S.D.N.Y. 2011)................................................................. 26–27

*In re Tether & Bitfinex Crypto Asset Litig.*,
   576 F. Supp. 3d 55 (S.D.N.Y. 2021)..................................................................... 24, 25

*In re Vivendi Universal, S.A. Sec. Litig.*,
   123 F. Supp. 3d 424 (S.D.N.Y. 2015)................................................................. 22–23

*Lattanzio v. Deloitte & Touche LLP*,
   476 F.3d 147 (2d Cir. 2007)................................................................................ 16–17

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005).............................................................................. *passim*

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
   223 F. Supp. 2d 435 (S.D.N.Y. 2001)........................................................................ 17

*Manchanda v. Google*,
   2016 WL 6806250 (S.D.N.Y. Nov. 16, 2016)............................................................ 28

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010)................................................................................................... 30

*Okla. Firefighters Pension & Ret. Sys. v. Musk*,
   2023 WL 6393865 (S.D.N.Y. Sep. 29, 2023)............................................................. 20

*Picard v. HSBC Bank PLC*,
   454 B.R. 25 (S.D.N.Y. 2011)..................................................................................... 28

*Ross v. Bolton*,
   904 F.2d 819 (2d Cir. 1990)....................................................................................... 29

*SEC v. One or More Unknown Traders in Sec. of Onyx Pharms., Inc.*,
   296 F.R.D. 241 (S.D.N.Y. 2013) ............................................................................... 13

*SEC v. W.J. Howey Co.*,
   328 U.S. 293 (1946)................................................................................................... 24

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*,
   277 F. Supp. 3d 521 (S.D.N.Y. 2017)........................................................................ 27

*Stark Trading v. Falconbridge Ltd.*,
   552 F.3d 568 (7th Cir. 2009) ..................................................................................... 22

*Stromfeld v. Great Atl. & Pac. Tea Co.*,
496 F. Supp. 1084 (S.D.N.Y. 1980)...................................................................... 17

*Tan v. Goldman Sachs Grp. Inc.*,
2024 WL 1357354 (S.D.N.Y. Apr. 1, 2024)........................................................... 20

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)................................................................................................ 8

*Trott v. Deutsche Bank, AG*,
2025 WL 2783555 (S.D.N.Y. Sep. 30, 2025)................................................... 28, 29

*UCAR Int'l Inc. v. Union Carbide Corp.*,
119 F. App'x 300 (2d Cir. 2004) ........................................................................... 29

*United States v. Martoma*,
894 F.3d 64 (2d Cir. 2017).............................................................................. 20–21

*Wargo v. Hillshire Brands Co.*,
599 F. Supp. 3d 164 (S.D.N.Y. 2022)................................................................ 27–28

*White Plains Hous. Auth. v. Getty Props. Corp.*,
2014 WL 7183991 (S.D.N.Y. Dec. 16, 2014) ...................................................... 11

*Wilson v. Comtech Telecomms. Corp.*,
648 F.2d 88 (2d Cir. 1981)..................................................................................... 23

*Wyse v. Metro. Com. Bank*,
2025 WL 2208161 (S.D.N.Y. Aug. 4, 2025)......................................................... 14

## Rules and Statutes

15 U.S.C. § 78t-1(a)............................................................................................... 23

Fed. R. Civ. P. 8.....................................................................................................13

Fed. R. Civ. P. 9..............................................................................................13, 18

## Other Authorities

*Terra Classic*, COINMARKETCAP, https://coinmarketcap.com/currencies/terra-luna/................ 6, 7

*TerraClassicUSD*, COINMARKETCAP, https://coinmarketcap.com/currencies/terrausd/............... 6

Verdict, *SEC v. Terraform Labs Pte Ltd. & Do Hyeong Kwon*,
No. 23-cv-1346 (JSR) (S.D.N.Y. Apr. 5, 2024), Dkt. No. 229 .............................................. 11

Final Judgment, *SEC v. Terraform Labs Pte Ltd. & Do Hyeong Kwon*,
No. 23-cv-1346 (JSR) (S.D.N.Y. June 12, 2024), Dkt. No. 273 ............................................ 11

Plea Transcript, *United States v. Do Hyeong Kwon*,
No. 23-cr-151 (PAE) (S.D.N.Y. Oct. 21, 2025), Dkt. No. 51 ................................................ 12

Judgment in a Criminal Case, *United States v. Do Hyeong Kwon*,
No. 23-cr-151 (PAE) (S.D.N.Y. Dec. 12, 2025), Dkt. No. 63 ......................................... 11, 23

Sentencing Hearing Transcript, *United States v. Do Hyeong Kwon*,
No. 23-cr-151 (PAE) (S.D.N.Y. Dec. 30, 2025), Dkt. No. 67 ......................................... 12, 26

Defendants Jane Street Group, LLC, Jane Street Capital, LLC, Bryce Pratt, Robert Granieri, and Michael Huang (together, the "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss all of Plaintiff's claims with prejudice.

## PRELIMINARY STATEMENT

This case is an attempt by the estate of Terraform Labs Pte Ltd. ("Terraform") to extract cash from Jane Street to foot the bill for a fraud that Terraform itself perpetrated on the market. Terraform now claims it was victimized by Jane Street's trading. The problem with this theory is that Terraform's fraud scheme—in which Jane Street had no involvement—has already been prosecuted, adjudicated, and punished. Terraform comes nowhere close to pleading facts to support its claims against the Defendants, and the Complaint's own allegations show that Terraform's legal theories are counterfactual and nonsensical.

Terraform's business was built on issuing and selling an algorithmic "stablecoin" TerraUSD ("UST"), which was purportedly designed to maintain a $1 value, and a companion token, LUNA, and offering a 20% return to those who deposited UST in Terraform's Anchor Protocol. Terraform and its founder, Do Kwon, spent years lying to the market to minimize concerns about the inherent risks that UST and LUNA could collapse. In May 2022, investors saw the public signs of that collapse: on May 7 alone, investors (including Jane Street) withdrew more than $2 billion in UST from Terraform's Anchor Protocol, responding to the same observable signals—a falling LUNA price, reduced Anchor yields, and the surge in risk for an already risky investment. A unanimous jury found Terraform and Kwon civilly liable for securities fraud, and Kwon (after two years as a fugitive) eventually pleaded guilty to federal conspiracy and wire fraud charges, admitting at his sentencing that he "alone [was] responsible for everyone's pain."

Against that backdrop, Plaintiff, the administrator for the bankrupt Terraform entities, now brings "insider trading" and "market manipulation" theories asserting that Jane Street—a sophisticated quantitative trading firm that moved quickly to sell a deteriorating investment as the market was visibly collapsing and declined to participate in a bailout—is responsible for the implosion of Terraform. That is not "accountability," as the Complaint claims, but a meritless attempt at blame-shifting that fails as a matter of law.

The Complaint is self-defeating: its own allegations negate any plausible inference of insider trading or market manipulation. For example, Plaintiff's own pleading acknowledges that Jane Street's single largest UST sale—85 million UST—occurred ten minutes *after* the supposed material non-public information ("MNPI") was visible to the market. And Plaintiff pleads that Jane Street began accumulating a short position on May 8, 2022—*before* it allegedly received any MNPI about a potential rescue package on the evening of May 9. These timing issues are fatal. Insider trading requires trading while in possession of MNPI, but the Complaint alleges the opposite.

Plaintiff also fails to plead nearly all the other elements of insider trading, including materiality, loss causation, breach of duty, and reliance. Regarding Jane Street's sales on May 7, Plaintiff identifies no information that was material or non-public. Plaintiff points to the timing of Terraform's transition to a new liquidity pool, but admits that the transition was publicly announced weeks earlier, acknowledges there was no market reaction to the announcement, and offers no plausible explanation for why the transition would have any impact on UST's value. Plaintiff pleads "on information and belief" that Jane Street learned the timing of Terraform's transition to a new liquidity pool through "back-channel communications," yet cannot identify a single communication disclosing that timing—despite extensive pre-suit discovery.

The alleged MNPI with respect to the later trades is nothing more than a description of publicly observable market conditions (which Plaintiff acknowledges Jane Street had been monitoring for months), combined with a third party's tentative interest in contributing a fraction of what it would take to rescue UST. In other words, there is no plausible allegation that Jane Street possessed MNPI. That alone is dispositive: insider trading cannot be based on information the market already knew. Insider trading also requires the breach of a duty. The Second Circuit recently confirmed in *Archegos* that no such duty exists between arm's-length counterparties. Yet Plaintiff concedes that the parties here were nothing more than that. The Complaint identifies no fiduciary relationship, no agreement of confidentiality, and no "extraordinary circumstances" that could transform commercial counterparties into fiduciaries. Nor could Terraform and the affiliated Luna Foundation Guard ("LFG") have relied on omissions of information they already possessed, and Plaintiff fails to allege that other investors (who purportedly assigned their claims to Plaintiff) traded "contemporaneously" with Jane Street, as the Securities Exchange Act ("Exchange Act") expressly requires.

Plaintiff's market manipulation claims under the Commodity Exchange Act ("CEA") are throwaway allegations that also require dismissal: the Complaint never alleges an "artificial price," never pleads manipulative intent, and affirmatively acknowledges that Jane Street took deliberate steps to *minimize* its market impact—the opposite of manipulation. Without a primary violation, the aiding and abetting claims necessarily fail as well. And Plaintiff's unjust enrichment claims are impermissibly duplicative of his failed insider trading theory and cannot survive on their own.

Plaintiff's claims on behalf of Terraform and LFG are independently barred by the *Wagoner* rule and the doctrine of *in pari delicto*. Plaintiff stands in the shoes of a convicted felon—its founder is serving a 15-year prison sentence for the very fraud that caused these losses—

and Plaintiff cannot use this lawsuit to recover the losses it caused from a third party. Finally, Plaintiff fails to allege that a single transaction at issue occurred in the United States, which requires dismissal of every Exchange Act and CEA claim.

For these reasons, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

### A. Terraform Labs, UST, and LUNA

Do Kwon is serving a 15-year prison sentence after pleading guilty to a massive fraud scheme that caused investors more than $40 billion in losses. The scheme began in 2018, when Kwon founded blockchain technology company Terraform. Compl. ¶¶ 33–34. Terraform was the issuer of several interrelated tokens, including UST and LUNA. *Id.* ¶ 35. UST was a so-called "algorithmic stablecoin" that Terraform intended to be pegged to the U.S. dollar. *Id.* Unlike a "reserve-backed stablecoin" that can be redeemed from the issuer for one dollar, an "algorithmic stablecoin" can be exchanged for one dollar's worth of a companion token (here, LUNA). *Id.* ¶¶ 31–32. A purchaser could exchange $1 worth of LUNA to mint one UST, or burn one UST to receive $1 worth of LUNA. *Id.* ¶¶ 35, 37. If the price of UST fell below $1, traders were incentivized to buy UST and swap it for $1 worth of LUNA, thus reducing the supply of UST and increasing its price. *Id.* ¶¶ 37–38. Conversely, if the price of UST rose above a dollar, traders were incentivized to buy $1 worth of LUNA to mint one UST (then valued above a dollar). *Id.* This arbitrage mechanism depends on the market's belief that LUNA has value. Otherwise, UST cannot maintain its peg to the dollar. In March 2021, Terraform launched the Anchor Protocol, a platform that allowed investors to "deposit" or "stake" their UST and earn a 20% return. *Id.* ¶ 39. Terraform could then use the UST deposited through Anchor to loan out to borrowers. *Id.*

On May 19, 2021, the price of UST dropped below $1. *Id.* ¶¶ 41–42. Within days, the peg was restored, which Terraform publicly credited to the success of its algorithm in counteracting

the known risks of a potential depeg. *Id.* ¶ 42. Plaintiff alleges that Terraform hid from investors that a trading firm—Jump Trading—had purchased large amounts of UST to artificially restore UST to its peg. *Id.* ¶¶ 4–5, 42, 124. In January 2022, Terraform announced the creation of LFG to help defend the UST peg. *Id.* ¶ 43. Terraform falsely claimed that LFG was an "independent entity." *Id.*

### B. Jane Street's Investments in UST and LUNA

Defendant Jane Street has been a successful quantitative trading firm for more than 25 years. *Id.* ¶ 46. Jane Street is a high frequency trader in both long and short positions in a wide variety of securities and commodities. *See id.* Defendant Robert Granieri is a co-founder of Jane Street, Defendant Michael Huang is an experienced trader at Jane Street, and Defendant Bryce Pratt is a systems developer (not a trader) at Jane Street, and a former summer intern at Terraform. *Id.* ¶¶ 21–23.

The Complaint alleges that Jane Street first bought UST in February 2022, acquired 10 million UST on March 15, 2022, and purchased approximately 190 million more UST in April 2022. *Id.* ¶ 100. Jane Street staked its UST holdings in the Anchor Protocol in order to earn 20% interest. *Id.* ¶ 101. Jane Street continuously monitored its investment in UST, including by analyzing and trying to better understand Terraform's various offerings. *Id.* ¶¶ 78–83, 85–86. As early as March 2022, Jane Street traders discussed the "rewards and risks of staking on Anchor" and the possibility of shifting to a "short LUNA target." *Id.* ¶ 78. In April 2022, Jane Street employees "discussed concerns about conditions they were seeing in the market" and speculated that although Jane Street was "very unlikely" to be the "6th largest depositor," "their position as the 6th biggest wallet involved 'feels like a bit of a red flag.'" *Id.* ¶¶ 92, 95.

In April 2022, Terraform announced that the return offered on the Anchor Protocol would decrease starting on May 1, 2022. *Id.* ¶ 103. This announcement concerned Jane Street employees

enough that they contemplated withdrawing up to 100 million UST from Anchor. *Id.* ¶ 104. They tested whether they could withdraw 8 million UST from Anchor and sell it without a significant impact on UST's price, and found that they were able to do so. *Id.* ¶¶ 104–05.

On April 2, 2022, Terraform announced it would switch liquidity pools from the Curve 3pool to the Curve 4pool. *Id.* ¶ 103. Liquidity pools are used to enable efficient, automated 24/7 trading of tokens—in this case different stablecoins, all of which were expected to be pegged to the U.S. dollar. *Id.* Plaintiff alleges the Curve 3pool provided liquidity for UST and three other stablecoins (USDC, USDT, and DAI) and was the largest stablecoin pool as of April 2022. *Id.* The Curve 4pool was expected to be launched in May 2022 and would have replaced DAI with FRAX. *Id.* The Complaint does not identify any other differences between the Curve 3pool and the Curve 4pool or any reason why the change was expected to affect UST's value. *Id.* Neither the price of UST nor LUNA decreased following Terraform's announcement about the shift.[1]

Plaintiff alleges that Pratt had maintained relationships with people he met at Terraform when he was a summer intern a year earlier. Plaintiff alleges that Pratt established lines of communication between Jane Street and Terraform, including in a group chat titled "Bryce's Secret," and that he received information from Terraform between February and May 5, 2022, during the time period when Jane Street was purchasing UST and before it had unstaked and sold its UST position. *Id.* ¶¶ 49–99, 106. Specifically, Plaintiff alleges that:

- Pratt told Terraform that Jane Street was potentially interested in "opening up lines of communication" with and investing in Terraform. *Id.* ¶¶ 67–69, 72.

---

[1]    *See* Declaration of Thomas Q. Lynch ("Lynch Decl."), Ex. A, *TerraClassicUSD*, COINMARKETCAP, https://coinmarketcap.com/currencies/terrausd; Lynch Decl., Ex. B at 1, *Terra Classic*, COINMARKETCAP, https://coinmarketcap.com/currencies/terra-luna/ (showing the price of UST remained steady and LUNA increased following Terraform's announcement on April 2, 2022); *see Dfinity Found. v. N.Y. Times Co.*, 702 F. Supp. 3d 167, 171 (S.D.N.Y. 2023) (concluding that courts may take judicial notice of the publicly available prices of digital assets).

- Pratt drafted a "terra explainer" and reached out to Terraform employees to "provide clarity" as he was drafting. *Id.* ¶ 77.

- Pratt answered a question about whether LFG held $450 million in Anchor's yield reserve by explaining that "LFG = Terra for all intents and purposes" and the money was "probably but not definitely LFG funds." *Id.* ¶ 79.

- Pratt told Huang "[I] think [Jump] ha[s] a monopoly on all the execution for anything LFG is doing." *Id.* ¶ 80.

- When Jane Street traders asked when the Anchor rate would drop, Pratt said he would "ask friends at TFL if they know the exact day/time," but apparently did not get an answer before Terraform's public announcement. *Id.* ¶ 81.

- Huang asked Pratt to confirm "publicly-available information . . . that he had pulled from a webpage" on Terraform, and Terraform's Head of Research (who the Complaint alleges was applying for a job at Jane Street) pointed Pratt to other publicly available sources that provided updated numbers. *Id.* ¶ 85.

- Terraform's Head of Research told Pratt that Jump makes "an absolute killing off of MEV in Terra." *Id.* ¶ 86.[2]

- Pratt told Jane Street colleagues that "trusted sources" had told him Alameda had more than $1 billion deposited on Anchor, and that his "one friend" said there was a $1.5 billion UST-BTC transaction with Genesis. *Id.* ¶¶ 93, 98.

## C. Jane Street's May 2022 Trading

Plaintiff's claims are based on two distinct sets of trading: 1) Jane Street's unstaking and sales of UST on May 7, 2022 (the "May 7 Sales"); and 2) Jane Street's trades establishing a short position in UST and LUNA starting on May 8, 2022 (the "May 8–13 Trades").

**May 7 Sales.** Between 11am on May 6 and 2am on May 7, the price of LUNA dropped from over $80 to below $74.[3] Seeing this price drop, and consistent with concerns it had raised in the preceding months including the relative size of its position, fears of a depeg risk, decreased rate of return on Anchor, and risk of *en masse* withdrawals, Jane Street unstaked and sold its UST

---

[2]     MEV stands for "maximal extractable value," which the Complaint alleges could be derived by "manipulating transaction ordering in a blockchain." *Id.* ¶ 8. The Complaint does not allege that Jane Street engaged in this practice.

[3]     *See* Lynch Decl., Ex. B at 2, *Terra Classic*, COINMARKETCAP, https://coinmarketcap.com/currencies/terra-luna/. All times listed are in Eastern Time (as in the Complaint).

position later in the day on May 7.[4]  Jane Street allegedly unstaked 45 million UST from the Anchor Protocol around 1am (at the direction of traders in London), another 30 million UST between 12:00pm and 1:30pm, and an additional 33 million UST between 4:35pm and 5:40pm. Compl. ¶¶ 107, 109.  Over that time, Jane Street gradually sold most of the UST it had unstaked. *Id.* ¶ 113.  As Terraform had already announced, it planned to shift from the Curve 3pool to Curve 4pool in May.  *Id.* ¶ 103.  To begin that shift, Terraform transferred 150 million UST from the Curve 3pool at 5:44pm.  *Id.* ¶ 110.  After that transfer, Jane Street unstaked 85 million UST and sold it at 5:53pm, in what the Complaint describes as "its largest single trade of UST."  *Id.* ¶ 114. By 6:15pm Jane Street had sold nearly all of its UST.  *Id.*

Plaintiff alleges that Jane Street's May 7 Sales were not based on a market selloff—as stated in its internal communications—but instead on "back-channel communications" with Terraform through which Jane Street purportedly learned that Terraform would transfer a large amount "of UST from the Curve 3pool on or about May 7, 2022."  *Id.* ¶ 117.  Plaintiff does not attempt to explain why Terraform's publicly pre-announced transfer from one liquidity pool to another would result in a decrease in the price of UST, especially when Terraform's prior announcement about the transfer caused no market reaction.  Nor does Plaintiff point to any communications connecting Jane Street's sales with the transfer, or even discussing the transfer.

---

[4]      This information is all corroborated in real-time communications cited in the Complaint. At 1:14am on May 7, a Jane Street trader in London alerted other traders that "LUNA [was] getting hit," and that "possibly $80m [had been] withdrawn from anchor."  Lynch Decl., Ex. C, JaneStreet00001124 (quoted at Compl. ¶ 316).  At 1:47am, the same trader updated the group that he unstaked 45 million from the Anchor Protocol after he "[w]oke up to a LUNA price of $74" which made him "nervous about a depeg risk."  Lynch Decl., Ex. D, JaneStreet00000394 at -397 (quoted at Compl. ¶ 120).

In ruling on a motion to dismiss, courts may consider "documents incorporated into the complaint by reference," such as these two documents, which Jane Street produced to Terraform Labs in its bankruptcy case and which were quoted in the Complaint. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

The only "back-channel communication" Plaintiff points to is a chat two days later in which Terraform's Head of Research says he previously provided "Bryce somewhat useful info." *Id.* ¶¶ 117–18.  There is no reference to sales of UST.  There is no reference to Terraform's Curve 3pool transfer.  And even if there were, there is no allegation that Pratt shared any of this unspecified "somewhat useful info" with Huang or other traders.  *Id.* ¶ 118.

**May 8–13 Trades.**  On May 8, after it had unstaked and sold out of its long UST position, Jane Street traders debated whether they should establish a short position in UST and LUNA given the observable price declines, "especially now that we've seen 2b of withdr[a]wals [from the Anchor Protocol] causes a mini depeg," as one trader observed.  *Id.* ¶ 123.  As the Complaint makes clear, "the decline in value of UST and Luna was publicly available information." *Id.* ¶ 137.  Plaintiff alleges that Jane Street began to reduce its position in UST and LUNA on May 8, 2022.  *Id.* ¶ 166.  By May 9, UST was trading below $0.80.  *Id.* ¶¶ 124, 137.  Jane Street continued to establish a short position throughout the day.  *Id.* ¶ 139.

On the afternoon of May 9, Pratt reached out to Terraform's Head of Research to ask when Jump Trading, a Jane Street competitor and the trading firm he believed handled "all the execution" for LFG, would try to restore the peg.  *Id.* ¶¶ 80, 125.  Terraform's Head of Research responded that Terraform and LFG "[j]ust gave jump a buncha money" and that it "should be soon."  *Id.* ¶ 126.  Later that afternoon, after Jane Street had already begun establishing a net short position, Jump reached out to Granieri, requesting to set up a meeting.  *Id.* ¶¶ 130–31.  Separately, half an hour after that, Pratt started a group chat with Kwon and Jane Street traders to "express [Jane Street's] interest in bidding on either BTC or LUNA."  *Id.* ¶ 129.  Kwon replied to the group that "Jump" already reached out to Jane Street "regarding a fundraise [we are] putting together."  *Id.*

¶¶ 129, 176.  That evening, Granieri spoke with Jump about the possibility of putting together a rescue package for Terraform.  *Id.* ¶ 131.

Granieri debriefed a subset of the Jane Street team later that night.  Granieri noted that UST and LUNA "ha[d] all started to fall apart over the last few days," UST had "dropped from $1 to between $0.70 and $0.980," and "Luna ha[d] dropped from like 80 to like 30."  *Id.* ¶ 133.  Granieri explained that Jump was "basically looking for help bailing [Terraform] out," and that Jump planned to invest only "100-200mln."  *Id.* ¶¶ 135–36.  Granieri found these numbers "concerning," given the small size of Jump's offer, and Granieri's estimate that a successful deal would need to be "at least $2 bln, maybe $5 bln."  *Id.* ¶ 136.  He concluded that Jump's offer left "a lot for [us] to think about," and in the meantime requested the group keep this information confidential as he had implemented an "informal wall" between Jane Street employees that listened to the call with Jump and traders on the crypto desk.  *Id.* ¶¶ 136–44.  Plaintiff does not allege that Huang or any other traders on the crypto desk learned about Jump's proposed investment in the rescue package. On May 10, after further internal discussions, Jane Street decided not to participate in a rescue package.  *Id.* ¶ 138.  As LUNA and UST prices continued to fall, Jane Street continued to hold a short position through May 13.  *Id.* ¶¶ 147–48.  By the time Jane Street closed those positions, UST had dropped to $0.15 while LUNA had fallen to nearly zero.  *Id.* ¶¶ 150–52.  On May 13, Jane Street also bought LUNA futures, which were worthless when they expired because the price of LUNA never recovered.  *Id.* ¶¶ 153–54.

On May 8, after publicly observable price drops and other signals of a likely UST depeg, Plaintiff alleges that Terraform purchased over 200 million UST and LFG purchased over 50 million UST.  Plaintiff alleges trading by Individual Claimants through the end of May 2022, without specifying when those trades occurred.  *See id.* ¶¶ 14, 16, 18.

**D. The Aftermath of Terraform's Collapse**

Following Terraform's May 2022 collapse, Terraform and Kwon have been subjects of enforcement actions by the U.S. Securities and Exchange Commission ("SEC") and criminal prosecution by the U.S. Department of Justice ("DOJ") for defrauding investors about UST and LUNA.[5] On January 1, 2024, while the SEC and DOJ actions were pending, Terraform Labs Pte. Ltd. and Terraform Labs Limited filed for bankruptcy. Through the Terraform litigation and bankruptcy proceedings, Plaintiff obtained access to extensive discovery, including Jane Street's trading data and almost 80,000 pages of Jane Street's internal communications.

On April 5, 2024, a jury unanimously found Terraform and Kwon liable for securities fraud. Lynch Decl., Ex. E, Verdict, *SEC v. Terraform Labs Pte Ltd. & Do Hyeong Kwon*, No. 23-cv-1346 (JSR) (S.D.N.Y. Apr. 5, 2024), Dkt. No. 229; Lynch Decl., Ex. F, Final Judgment, *SEC v. Terraform Labs Pte Ltd. & Do Hyeong Kwon*, No. 23-cv-1346 (JSR) (S.D.N.Y. June 12, 2024), Dkt. No. 273 ("Final Judgment"). Terraform and Kwon consented to a judgment that required them to pay over $4.5 billion, with assets distributed to investor victims. Final Judgment at 6–7.

In December 2025, Kwon pleaded guilty to conspiracy and wire fraud charges, and was sentenced to fifteen years' imprisonment—longer than the government recommended—and ordered to forfeit an additional $19 million in proceeds from his fraud. Lynch Decl., Ex. G, Judgment in a Criminal Case, *United States v. Do Hyeong Kwon*, No. 23-cr-151 (PAE) (S.D.N.Y. Dec. 12, 2025), Dkt. No. 63. As part of his guilty plea, Kwon admitted to defrauding purchasers of cryptocurrencies issued by Terraform, admitting specifically that "following the de-pegging of UST stable coin in May 2021, [he] made false and misleading statements of why it regained its

---

[5]    In reviewing a motion to dismiss, "courts in this circuit routinely take judicial notice of complaints and other publicly filed documents." *White Plains Hous. Auth. v. Getty Props. Corp.*, 2014 WL 7183991, at *2 (S.D.N.Y. Dec. 16, 2014); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995).

peg by failing to disclose a trading firm's role in restoring that peg." Lynch Decl., Ex. H, Plea Transcript at 31, *United States v. Do Hyeong Kwon*, No. 23-cr-151 (PAE) (S.D.N.Y. Oct. 21, 2025), Dkt. No. 51. Kwon told the court, "I understood that purchasers of UST relied on those false statements when making their purchases. What I did was wrong . . . I take full responsibility." *Id.* at 31–32. In handing down Kwon's sentence, Judge Paul Engelmayer described Kwon's offenses as "fraud on an epic generational scale," and said that "[i]n the history of federal prosecutions, very few cases have caused more monetary harm than you did, Mr. Kwon." Lynch Decl., Ex. I, Sentencing Hearing Transcript at 134, *United States v. Do Hyeong Kwon*, No. 23-cr-151 (PAE) (S.D.N.Y. Dec. 30, 2025), Dkt. No. 67. Judge Engelmayer stated that "[t]he central lie, of course, went to the heart of Terraform's business model" and that Kwon had "falsely claimed that Terraform developed functioning, reliable, algorithmic technologies to assure a stable value of its so-called stablecoin." *Id.* at 135.

## ARGUMENT

### I.      Plaintiff's Insider Trading Claims (Counts One Through Nine) Fail

Plaintiff asserts insider trading claims based on two distinct sets of trades by Jane Street during the week when Terraform's massive fraud unraveled and UST permanently depegged.[6] To state a claim for insider trading pursuant to Section 10(b) of the Exchange Act, Plaintiff must allege that each defendant: "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005). Plaintiff's insider trading claims must be dismissed because Plaintiff

---

[6]      Failure to state a predicate insider trading claim under Section 10(b) requires dismissal of the underlying 20A and 20(a) claims as well. *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 356 (2d Cir. 2022).

fails to allege particularized facts for nearly all of these elements, and because the Complaint's own allegations negate any plausible inference of insider trading.

### A. Plaintiff's Insider Trading Claims Fail as to the May 7 Sales

Plaintiff's May 7 insider trading claims are premised on the theory that Jane Street sold UST because it had obtained MNPI that Terraform's previously announced planned large transfer "of UST from the Curve 3pool [would occur] on or about May 7, 2022." Compl. ¶ 117; *see id.* ¶¶ 171, 223. This theory fails for four independent reasons.

*First*, Plaintiff fails to plead any facts indicating Defendants even knew about the timing of Terraform's transfer from the Curve 3pool. Plaintiff points to no communication in which any Terraform employee disclosed the timing of this transfer, or any internal Jane Street communications suggesting it possessed such information. What does Plaintiff rely on? A generic comment by Terraform's Head of Research in a chat days later that he had provided unspecified "somewhat useful info" to Jane Street, and Plaintiff's speculation "on information and belief" that the comment related to the timing of the Curve 3pool transfer. *Id.* ¶¶ 117–18. These allegations do not meet even Rule 8's notice pleading requirements. *See SEC v. One or More Unknown Traders in Sec. of Onyx Pharms., Inc.*, 296 F.R.D. 241, 251 (S.D.N.Y. 2013) (allegations that "'upon information and belief' the Defendants were tipped" were "all belief and no information" where facts alleged "do[] nothing to nudge the [plaintiff's] claim across the line from conceivable to plausible" (citation omitted)). They fall well short of Rule 9(b)'s heightened pleading requirements, which generally "cannot be based upon information and belief" except in limited and "peculiar" circumstances that are inapplicable here. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). The inability to point to anything suggesting Jane Street possessed the alleged MNPI is especially damning where, as here, Plaintiff already received

-13-

"extensive document discovery during the underlying bankruptcy proceedings."[7]  *Wyse v. Metro. Com. Bank*, 2025 WL 2208161, at *8 (S.D.N.Y. Aug. 4, 2025).

*Second*, the Complaint contains no facts to support its conclusory claim that the timing of Terraform's transfer from the Curve 3pool was a "critical, non-public event."  Compl. ¶ 116.  To the contrary, the Complaint acknowledges that Terraform publicly announced in April that it would soon transition to a new curve pool.  *Id.* ¶ 103.  If the transition from the Curve 3pool to the Curve 4pool was "critical," this announcement would have caused a drop in the price of UST and LUNA.  It did not.  *See supra* at 6.  Tellingly, the Complaint pleads no facts as to why a liquidity pool transition would have a negative impact on the price of UST or LUNA, or why Terraform would choose to implement a plan that, when executed, would negatively impact UST or LUNA. Nor is there any plausible basis to infer that investors in UST or LUNA considered information regarding the specific timing of that transfer to be "important in deciding how to act."  *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389, 390–92 (2d Cir. 2015) (affirming dismissal of a complaint for securities fraud because the allegedly undisclosed information was immaterial).

*Third*, the Complaint does not allege with particularity that the May 7 Sales were made "in connection" with information about the timing of the Curve 3pool transfer.  *Lentell*, 396 F.3d at 172 (plaintiff must allege that material omissions were made "in connection with the purchase or sale of securities").  Jane Street's growing concern about UST's stability in light of public market signals is the far more plausible "alternative explanation for" the May 7 Sales.  *See In re Archegos 20A Litig.*, 156 F.4th 108, 120 (2d Cir. 2025) (declining to assume information was tipped when

---

[7]    Plaintiff obtained discovery from Terraform's litigation with the SEC, including access to 7,988 documents spanning 79,198 pages that Jane Street produced to the SEC.

other factors alleged in the complaint explained market activity). Plaintiff himself alleges that in the weeks before May 7, Jane Street traders considered moving to a "short LUNA target," "discussed concerns about conditions they were seeing in the market," and "contemplate[ed]" unstaking a significant amount of UST from Anchor, none of which Plaintiff asserts had anything to do with any purported MNPI. Compl. ¶¶ 78, 92, 106. The Complaint also highlights concerning market developments, including that, on May 1, 2022, Anchor would decrease the rate of return below 20% and that there were approximately $2 billion of UST withdrawals on May 7 alone. *Id.* ¶¶ 103–04, 123. And, if there could be any doubt about it, internal Jane Street documents Plaintiff incorporates into the Complaint show that Jane Street's traders were focused on precisely these public market signals including the significant drop in the price of LUNA the morning of May 7— not the already-announced Curve 3pool transfer. *See* Lynch Decl., Ex. C, JaneStreet00001124 (quoted at Compl. ¶ 316); Lynch Decl., Ex. D, JaneStreet00000394 at 397 (quoted at Compl. ¶ 120).

Plaintiff asks the Court to infer that Jane Street traded "in connection" with inside information about Terraform's planned Curve 3pool transfer based on the supposedly suspicious timing of the May 7 Sales, particularly the fact that Jane Street unstaked and sold UST from Anchor on May 7. Compl. ¶¶ 109–15. But all plausible inferences cut against Plaintiff. Jane Street still had a significant long UST position and did not make its "largest [] trade of UST" until *after* Terraform's transfer from the Curve 3pool. *Id.* ¶ 114. This disproves Plaintiff's assertion that Jane Street used purported inside information about the timing of that transfer to its advantage "to sell its UST at the most opportune moment." *Id.* ¶¶ 107, 121. And Plaintiff's other allegations confirm there was *nothing* suspicious about the timing of Jane Street's May 7 Sales: the Complaint also acknowledges that, after Terraform announced it would be reducing the return it provided to

investors who staked UST in Anchor, Jane Street began contemplating unstaking, and tested unstaking UST on April 25, 2022 to ensure it could do so with minimal market impact. *Id.* ¶¶ 104–05.

*Fourth*, the Complaint fails to plausibly allege that Jane Street's supposed concealment of the timing of the Curve 3pool transfer caused investor losses. Loss causation "is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Altimeo Asset Mgmt. v. Qihoo*, 663 F. Supp. 3d 334, 356, 379 (S.D.N.Y. 2023) (dismissing insider trading claim because plaintiff "cannot claim a cognizable loss at [defendant's] hands"). The misconduct in an insider trading case is the "fail[ure] to disclose [MNPI]" that informed one's trading. *Gordon v. Sonar Cap. Mgmt. LLC*, 962 F. Supp. 2d 525, 528 (S.D.N.Y. 2013). Accordingly, "a plaintiff must allege . . . that the *subject* of the . . . omission was the cause of the actual loss suffered." *Lentell*, 396 F.3d at 174. Plaintiff cannot (and does not even try to) plead any causal connection between the supposed concealment of the timing of Terraform's transfer from the Curve 3pool and UST's collapse; that pleading failure alone requires dismissal. *See Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1495 (2d Cir. 1992) (dismissing complaint when plaintiff "suggest[s] no reason why the investment was wiped out" by challenged omission).

The facts alleged in the pleadings and the SEC's proceedings against Terraform and Kwon once again show the far more plausible (and indeed proven and admitted) cause for UST's collapse: the massive fraud perpetrated by Terraform and its convicted founder. *See supra* at 11–12. Plaintiff also cannot plausibly allege that Jane Street's alleged concealment of Terraform's transfer from the Curve 3pool caused Plaintiff's economic losses in the face of the known risk of a depeg. *See In re New Energy Sys. Sec. Litig*., 66 F. Supp. 3d 401, 406 (S.D.N.Y. 2014) (no loss causation when "risk necessarily was clear to the market"); *Lattanzio v. Deloitte & Touche LLP*,

476 F.3d 147, 157 (2d Cir. 2007) (no loss causation when "it cannot be said that the risk of bankruptcy was altogether concealed"); *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, 2024 WL 4349289, at *9 (S.D.N.Y. Sep. 30, 2024) ("Plaintiff cannot now point to the materialization of . . . known risks to show loss causation"); *Lentell*, 396 F.3d at 176 (no loss causation when "plaintiffs fail . . . to account for the price-volatility risk inherent in the stocks they chose to buy," and "the high-risk nature of the investment . . . was available to the marketplace").

Plaintiff cannot cure these pleading failures with conclusory statements that Jane Street had an "inside edge" based on unspecified MNPI about the Terraform "ecosystem" supposedly shared with Defendants weeks or months before the May 7 Sales. *See, e.g.*, Compl. ¶¶ 62, 66, 74, 77, 121. Legal conclusions that lack "any specific description of the alleged inside information" provide "grounds in itself for dismiss[al]." *Stromfeld v. Great Atl. & Pac. Tea Co.*, 496 F. Supp. 1084, 1087 (S.D.N.Y. 1980); *Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 447 (S.D.N.Y. 2001) (same).

As for the remaining allegations about information Terraform employees shared with Defendants before May 7, Plaintiff fails to offer any explanation as to how these statements constituted MNPI or are otherwise relevant to his claims. Plaintiff points to information Terraform gave Jane Street to solicit Jane Street's investment in Terraform's products beginning in February 2022. *See, e.g.*, Compl. ¶ 75 (alleging Terraform employee shared an "opportunity to invest in Luna," discussed "initiatives at the company," and noted "significant opportunit[ies]" to profit through Terraform); *id.* ¶ 85 (alleging Terraform employee provided updated figures for "publicly-available information"); *id.* ¶ 86 (alleging Terraform employee said that another firm "makes an absolute killing off [a trading strategy] in Terra"). The notion that Jane Street decided to sell its UST on May 7 based on vague "optimistic" statements made by Terraform months or weeks earlier

-17-

is nonsensical.  *See Barilli v. Sky Solar Holdings, Ltd*., 389 F. Supp. 3d 232, 250 (S.D.N.Y. 2019).

The Complaint also identifies a handful of instances in which Jane Street learned negative

information about Terraform in February and March 2022.  *See, e.g.*, Compl. ¶ 78 (alleging that

Jane Street had "evidence that Terraform Labs is buying back Anchor to prop up the price"); *id.*

¶ 79 (alleging that Jane Street learned that "LFG = Terra for all intents and purposes" and that

"[i]nvestment documents don't seem to force LFG funds to be used for bitcoin fund like

publicized").  But Plaintiff's allegation that Jane Street was *buying and then staking* UST during

the same time period it was supposedly learning this negative market color defeats any inference

it was important, let alone material.  *Compare id.* ¶¶ 100–01*, with id.* ¶¶ 75–77.

To the extent Plaintiff's argument is that Terraform and Jane Street generally were in

communication and shared certain information, mere allegations of access or opportunity—absent

particularized facts about what MNPI was passed and how—are insufficient to survive a motion

to dismiss under Rule 9(b).  *See Gordon*, 962 F. Supp. 2d at 529–30 (granting a motion to dismiss

where alleged tipper and tippee "spoke on at least twenty occasions" during the relevant time

period but the complaint failed to allege with particularity "that the substance of those

conversations entailed the passing of [MNPI] that caused specific trades").

### B.  Plaintiff's Insider Trading Claims Fail as to the May 8–13 Trades

Plaintiff claims Jane Street improperly traded between May 8–13 based on MNPI it

allegedly misappropriated from a competitor—Jump Trading—on May 9 about "the amount and

status of Terraform's reserves, Jump's limited interest in contributing to the bail out, and the need

to enlist other investors to aid the bail out efforts."  Compl. ¶¶ 122, 137–38, 175.  This claim fails

for three independent reasons.

*First*, there is again a fundamental timing flaw in Plaintiff's theory.  Plaintiff alleges that

Jane Street decided to establish a short position in UST and LUNA *by May 8*, repeatedly stating

that his insider trading claims are based on Jane Street "short[ing] UST and Luna *on* and after May 8, 2022, based on material non-public information." *E.g.*, *id.* ¶¶ 166, 175, 177, 182, 191, 193, 198, 207, 209, 214, 228 (emphasis added).  Plaintiff also alleges that Defendants did not learn the MNPI until "later in the afternoon of May 9." *Id.* ¶ 131.[8]  Plaintiff closes his eyes to the inconvenient fact that he pleads that Jane Street began accumulating a short position *before* it is alleged to have misappropriated MNPI. *Id.* ¶¶ 122–56.  As with the May 7 sales, the Complaint's own timeline disproves the insider trading theory it purports to advance.

*Second*, even if the timing aligned, Plaintiff's insider trading theory is foreclosed by Second Circuit authority.  In *Archegos*, the Second Circuit recently affirmed the dismissal of insider trading claims because plaintiffs failed to allege with particularity that the alleged tipper (securities firm Archegos) had a fiduciary duty to the plaintiff shareholders of the issuers based on Archegos' alleged status as "a beneficial owner of large quantities" of the issuers' stock. *In re Archegos 20A Litig.*, 156 F.4th at 117–18.  The court also found that plaintiffs failed to allege the defendant brokers had a fiduciary relationship with the source of information (Archegos) based solely on their status as "parties to a transaction who negotiate at arm's length." *Id.* at 119–20.

*Archegos* is directly on point and requires dismissal because Plaintiff fails to plead particularized facts that the alleged tipper (Jump) breached a fiduciary duty to the company (Terraform), or that Defendants breached a fiduciary duty to the alleged source of the information (Jump).  "[A] fiduciary relationship, or its functional equivalent, exists only where there is explicit acceptance of a duty of confidentiality or where such acceptance may be implied from a similar relationship of trust and confidence[.]" *Id.* at 119.  Plaintiff tries to plead around this defect by

---

[8]    An internal Jane Street document, incorporated into the Complaint by reference, shows Jump did not reach out to schedule a call until 4:48pm on May 9.  Lynch Decl., Ex. J, JaneStreet00001354 (referenced in Compl. ¶ 130).

asserting—with no factual basis—that Jump had "a temporary insider relationship with Terraform's shareholders as a result of Jump's verbal and written agreements with Terraform" to "maintain the UST's peg." Compl. ¶ 257. Stripped of its legal conclusion, this allegation is a concession that Jump and Terraform were arm's-length counterparties that are "not considered to be fiduciaries of each other." *Archegos*, 156 F.4th at 119; *see also Okla. Firefighters Pension & Ret. Sys. v. Musk*, 2023 WL 6393865, at *18 (S.D.N.Y. Sep. 29, 2023). Plaintiff's mere labeling of Jump as an "insider" falls short of the high pleading bar imposed under Second Circuit precedent to allege "corporate insider" status. *See Archegos*, 156 F.4th at 117–18 (concluding the complaint's allegations "fall well short" of alleging "that Archegos had access to . . . internal corporate information or exercised control over any Issuer's corporate affairs so as to render it a corporate insider"). Plaintiff fails to identify any specific provision in Terraform's agreements with Jump that purportedly transformed Jump into a fiduciary, despite having access to any such "verbal and written agreements." Compl. ¶ 230.

Even if Jump owed a duty to Terraform, Jump could not have breached that duty by sharing information about its *own* potential interest in "bailing out" Terraform. "[T]o breach a duty, an insider must trade (or tip) on confidential information that 'belongs to the firm itself.'" *Tan v. Goldman Sachs Grp. Inc*., 2024 WL 1357354, at *6 (S.D.N.Y. Apr. 1, 2024); *see Chiarella v. United States*, 445 U.S. 222, 231 (1980). Liability on this theory is also foreclosed because Jump is alleged to have shared information to help Terraform. *See* Compl. ¶ 135. An insider does not breach a duty when it shares information for a "legitimate corporate purpose." *United States v. Martoma*, 894 F.3d 64, 73 (2d Cir. 2017).[9] And Plaintiff does not even attempt to allege that Jane

_____

[9]    The Complaint also fails to set forth well pleaded facts that Jane Street knew or had reason to know that Jump breached a fiduciary duty to Terraform. Instead, the Complaint alleges that Kwon himself told Jane Street that Jump would be reaching out about a rescue package. *See*

Street had a duty to Terraform (much less breached one).[10]

Plaintiff also does not plead that Jane Street owed, or breached, any fiduciary duty to Jump. Nor can one be inferred. To the contrary, the only plausible inference is that there were no duties owed because the Complaint describes Jump and Jane Street as independent commercial actors discussing a potential arm's-length transaction that Jump was considering with the goal of restoring the UST peg. "When parties deal at arm['] s length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *Archegos*, 156 F.4th at 119 (quoting *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002)). Plaintiff pleads no extraordinary circumstances that would transform Jane Street into a fiduciary of Jump or otherwise give rise to a "fiduciary-like duty." *See id.* at 117–18. Jane Street and Jump were and are direct competitors. They share none of the "hallmark[s] of a fiduciary relationship," such as a "relationship of confidence or trust," or an agreement to "serve [each other's] interests." *Id.* at 119.

*Third*, the Complaint fails to plausibly allege loss causation with regard to the purported MNPI Jane Street obtained from Jump. "To establish loss causation a plaintiff must show that the economic harm that it suffered *occurred as a result* of the alleged misrepresentations." *Citibank*, 968 F.2d at 1495 (emphasis in original). Here, by the evening of May 9 when Jane Street allegedly obtained MNPI from Jump, "the value of UST [had already] declined sharply," and LUNA had dropped from approximately $80 to $30. Compl. ¶¶ 122, 133. A plaintiff cannot, as a matter of

---

Compl. ¶ 129; *Dirks v. SEC*, 463 U.S. 646, 660 (1983) (explaining a tippee is liable "only when . . . the tippee knows or should know that there has been a breach").

[10] Plaintiff cannot rely on Terraform's Employee Code of Ethics somehow applying to Defendants, as Plaintiff does not even allege that this code applied to summer interns, such as Pratt, let alone explain how it could have any continuing application long after the internship concluded, during his employment at a different company. *See* Compl. ¶¶ 53–54.

law, establish loss causation based on the alleged concealment of MNPI that only occurs *after* the asset in question "had already lost almost all its value." *60223 Tr. v. Goldman, Sachs & Co.*, 540 F. Supp. 2d 449, 459–61 (S.D.N.Y. 2007) (dismissing claim for lack of loss causation). Plaintiff's inability to plead loss causation here is even more stark because, as discussed above, it is well established that the direct cause of investor losses was Terraform and Do Kwon's fraud—in which Jane Street played no part. Given that "intervening direct cause," the "same injury cannot be said to have occurred by reason of" any actions by Jane Street. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994) (affirming dismissal for lack of loss causation).

### C. Plaintiff's Insider Trading Claims on Behalf of Terraform and LFG Independently Fail for Lack of Reliance

Plaintiff also must show that "but for the claimed misrepresentations or omissions," Terraform and LFG "would not have entered into the detrimental securities transaction." *Lentell*, 396 F.3d at 172 (citation omitted).

It is inconceivable that Terraform purchased UST or LUNA in reliance on Jane Street's concealment of information that Jane Street had allegedly obtained from Terraform directly or from Jump. Terraform *already knew* all of the same information that Jane Street allegedly knew, including that Jump had already reached out to Jane Street regarding "a fundraise for Terraform." Compl. ¶ 129. Likely for that reason, Plaintiff does not allege that Terraform would not have bought UST or LUNA if Jane Street had disclosed this information to it. *See Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 573 (7th Cir. 2009) ("[E]ven if the other minority shareholders were blind sheep . . . , the plaintiffs would not have a claim . . . because they were never deceived."); *In re Vivendi Universal, S.A. Sec. Litig.*, 123 F. Supp. 3d 424, 438 (S.D.N.Y. 2015) ("[A] plaintiff who buys or sells a stock with knowledge that the stock price was tainted by fraud is not entitled to the presumption [of reliance].").

-22-

LFG cannot plead reliance for the same reason.  LFG was operated by convicted felon Do Kwon as an arm of Terraform.  *See, e.g.*, Compl. ¶ 79 (alleging that Pratt learned from his contacts at Terraform that "LFG=Terra for all intents and purposes"); *see also* Lynch Decl., Ex. G, Judgment at 1–2, *United States v. Do Kwon*, No. 23-cr-151 (PAE) (S.D.N.Y. Dec. 12, 2025), Dkt. No. 63; *see supra* at 11–12.

### D. Plaintiff's Insider Trading Claims Fail to the Extent That They Seek to Recover for Non-Contemporaneous Trades

Even if Plaintiff's insider claims were plausibly alleged—and they are not—Plaintiff must also allege that Terraform, LFG, and the Individual Claimants traded "contemporaneously" with Jane Street.  *See Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88, 94–95 (2d Cir. 1981); 15 U.S.C. § 78t-1(a).  This is because purchasers who were "no longer in the market with" Jane Street could "not suffer the disadvantage of trading with someone who has superior access to information."  *Brodzinsky v. FrontPoint Partner LLC*, 2012 WL 1468507, at *5 (D. Conn. Apr. 26, 2012); *Wilson*, 648 F.2d at 94–95.  In the 24/7 cryptocurrency markets, which feature instantaneous transactions, purchases even one day (if not less) after Jane Street's alleged trades fail this contemporaneous requirement.  Plaintiff purports to seek recovery on an unspecified set of trades spanning from May 7 through May 31, even though Jane Street's sales occurred only on May 7 and it maintained a short position only from May 8 through 13.  *See In re Genentech, Inc. Sec. Litig.*, 1989 WL 201577, at *6 (N.D. Cal. Dec. 11, 1989) (allegation that plaintiffs traded on "unidentified days" within period insufficient).  This failure, coupled with the fact that there can be no loss causation after May 8 because UST had lost its peg and LUNA's value was in free fall, *see supra* at 9–10, requires, at a minimum, dismissal of Plaintiff's claims based on Terraform and LFG purchases on or after May 8, and all of Plaintiff's claims on behalf of the Individual

Claimants, for whom Plaintiff does not specify the dates of any purchase. *See* Compl. ¶ 18 (Individual Claimants include those who traded through May 31, 2022).

## II.    Plaintiff's Market Manipulation Claims (Counts Ten Through Fifteen) Fail

Plaintiff's allegations regarding Jane Street's May 7 Sales and May 8–13 Trades also do not resemble any recognized market manipulation scheme. Plaintiff has tacked on CEA market manipulation claims in a transparent effort to hedge against the risk that the Court ultimately finds that the securities laws do not apply to UST and/or LUNA.[11] Market manipulation claims, however, require a plaintiff to plead with particularity that (1) "defendant possessed an ability to influence market prices," (2) "an artificial price existed," (3) "defendant caused the artificial price," and (4) "defendant specifically intended to cause the artificial price." *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 110 (S.D.N.Y. 2021); *see also In re Commodity Exch. Inc., Gold Futures and Options Trading Litig.*, 328 F. Supp. 3d 217, 231 (S.D.N.Y. 2018) ("Market manipulation claims sounding in fraud must be pleaded with particularity."). Plaintiff's market manipulation claims must be dismissed because Plaintiff hardly acknowledges these elements, let alone explains how the Complaint's largely conclusory allegations about Defendants' supposed misuse of MNPI could possibly satisfy Plaintiff's pleading burden on a market manipulation theory. *See, e.g.*, Compl. ¶¶ 311–20.

*First*, the Complaint is largely silent on the "artificial price" requirement, aside from conceding that it was Terraform and its convicted founder who, as part of their fraud, arranged with a "large trading firm" to "artificially restore the peg" after UST's first depeg in 2021. *Id.* ¶ 42. Plaintiff is careful not to allege explicitly that the pre-May 7 prices of UST and LUNA were "artificial" because the only plausible inference to draw would be that any such artificial prices

---

[11]    For the avoidance of doubt, Defendants reserve any and all arguments that UST and LUNA are not "securities" under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).

were caused by Terraform and Kwon.  But Plaintiff's failure to allege that UST or LUNA prices were artificial—let alone to plead any particularized facts to support the implausible inference that Jane Street had the ability to cause and in fact did cause such artificial prices—is fatal to Plaintiff's market manipulation claims.

*Second*, Plaintiff's own allegations directly contradict any plausible inference of manipulative intent.  *See In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 183 (2d Cir. 2013) ("There is [] no manipulation without intent to cause artificial prices.").  The Complaint specifically describes efforts taken by Jane Street to ensure that, if it needed to exit its UST position, it could do so in a way designed to minimize market impact.  *See* Compl. ¶¶ 104–05 (describing how Jane Street's market testing to assuage "concern[s] that withdrawing and selling a sizable volume of UST could move the stablecoin's market price" demonstrated that its "sales of 8 million UST had little impact on UST's price"); *see also id.* ¶ 95 (traders believed Jane Street was "very unlikely" to be even the "6th largest depositor" of UST).[12]  Plaintiff tries to distort this point by arguing that "Jane Street acknowledged [] they would likely impact the market with big trades."  *Id.* ¶ 316.  But even knowledge that a transaction is likely to have market impact—which has not been plead here—would be a far cry from manipulation: "only intent, not knowledge, can transform a legitimate transaction into manipulation."  *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 539 (S.D.N.Y. 2008); *see also ATSI Commc'ns, Inc. v. Shaar Fund,*

---

[12]    To the extent that Plaintiff is relying on a manipulative device theory, *see, e.g.*, Compl. ¶¶ 315–16, that theory fails because Plaintiff does not adequately pleaded that Defendants "[1] engaged in prohibited conduct . . . ; [2] with scienter; and [3] in connection with a contract of sale of a commodity in interstate commerce."  *In re Tether*, 576 F. Supp. 3d at 112 (citation omitted).  Plaintiff's only theory of alleged misconduct is that Jane Street traded in violation of the federal securities laws, but those laws would not apply if UST and LUNA were held not to be securities.  And, as discussed above, Plaintiff's own allegations contradict the notion that Defendants acted with intent to manipulate the market.

*Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007) ("Furthermore, short selling—even in high volumes—is not, by itself, manipulative.").

*Third*, Plaintiff's remaining allegations do not support a market manipulation theory. Plaintiff contends that Jane Street "amplified market impact and destabilized the market" and "triggered the initial depeg" due to its sale of 85 million UST on May 7, 2022. Compl. ¶ 318. But Plaintiff simultaneously acknowledges "2 b[illion] of withdr[a]wals" within the same time period, *id*. ¶ 317, revealing that Jane Street's activity was consistent with broader market movement and accounted for only a fraction of the total volume. The only logical inference to be drawn from Plaintiff's allegations is that UST's collapse in May 2022 was the product of an inherently unstable market with a prior "significant depeg event" in 2021, Compl. ¶ 41, and the actions of other investors who, like Jane Street's traders, grew alarmed by LUNA's price decline. Plaintiff further claims that Jane Street traders behaved "intentionally or recklessly" with respect to the May 8–13 Trades because they expressed the desire to "short [L]UNA" following the "mini depeg," Compl. ¶ 317, but these allegations merely reflect traders responding to public market conditions. *See also, e.g.*, *id.* ¶ 133 ("LUNA had dropped from like 80 to 30" after May 7, 2022). Indeed, if anyone bears responsibility for UST's collapse, it is Terraform, whose founder pleaded guilty to fraud and acknowledged responsibility for investors' losses. *See supra* at 11–12; Lynch Decl., Ex. I, Sentencing Hearing Transcript at 140, *United States v. Do Hyeong Kwon*, No. 23-cr-151 (PAE) (S.D.N.Y. Dec. 30, 2025), Dkt. No. 67 (Kwon acknowledging that he "alone [was] responsible for everyone's pain").

*Finally*, Plaintiff's aiding and abetting claims also must be dismissed, as Plaintiff fails to allege "that a primary party committed a commodities violation." *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 599 (S.D.N.Y. 2011) (citation omitted). The Complaint

also fails to allege with particularity that any Individual Defendant (i) had knowledge that another Defendant intended to commit market manipulation, (ii) intended to further that violation, and (iii) committed some act in furtherance of the violation. *Id.* at 599. Plaintiff's conclusory assertion that the Individual Defendants had "knowledge of Jane Street's intent to violate the CEA" because Jane Street made large investments in April 2022 is insufficient, Compl. ¶ 344, as mere knowledge of trading positions does not establish knowledge of market manipulation. *See In re Amaranth,* 730 F.3d at 184. Similarly, Plaintiff fails to allege any act by the Individual Defendants that would plausibly support an inference that they intended to further market manipulation, let alone that they committed any overt act in furtherance of it, for the same reasons noted above.

At its core, the Complaint simply depicts a group of traders who actively monitored risk and executed trades in a dynamic market based on observable market signals. "[A] trading pattern . . . supported by a legitimate economic rationale . . . cannot be the basis for liability under the CEA." *In re Amaranth*, 587 F. Supp. 2d at 534. For these reasons, Plaintiff's market manipulation claims must be dismissed.[13]

### III.  Plaintiff's Unjust Enrichment Claims (Counts Sixteen Through Eighteen) Fail

Plaintiff's unjust enrichment claims should be dismissed because they are "merely duplicative of" his insider trading claims. *Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 178 (S.D.N.Y. 2022) (citation omitted). As with Plaintiff's insider trading claims, his unjust

---

[13]    The CEA claims brought on behalf of the Individual Claimants independently fail for lack of standing because Plaintiff fails to set forth well pleaded facts that they "suffered actual damages by transacting at times when defendants manipulated" the market. *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 570 (S.D.N.Y. 2017). Plaintiff fails to plead contemporaneity with respect to the Individual Claimants' trades after May 13, 2022 and therefore cannot plead damages. As for Individual Claimants' trades "preceding the May 2022 depeg event," Compl. ¶ 339, "[n]o other details are provided; no specific dates, no number of transactions . . . . [Plaintiff] must at minimum provide some details regarding his transactions that are within his knowledge and bear on the plausibility that the alleged manipulation caused actual damage." *Sonterra*, 277 F. Supp. 3d at 570–71.

enrichment claims are premised on two allegations: Jane Street's alleged reliance on MNPI to trade on May 7 and to establish a short position on and after May 8. *Compare* Compl. ¶¶ 370, 372 (unjust enrichment allegations), *with id.* ¶¶ 171–73, 175 (insider trading allegations). Plaintiff makes no effort to differentiate his unjust enrichment claims from his insider trading claims, either in the facts alleged or the theory of liability. These claims should therefore be dismissed. *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 474 (S.D.N.Y. 2020) (dismissing unjust enrichment claim as "entirely duplicative" because it "relies on the same factual allegations and the same theory of liability" as plaintiffs' other theories of recovery).[14]

## IV.    Terraform and LFG's Claims Are Barred by Their Own Wrongdoing

Plaintiff "stands in the shoes of [Terraform and LFG]" and his claims on their behalf are an impermissible "su[it] to recover for a wrong that he himself essentially took part in." *Trott v. Deutsche Bank, AG*, 2025 WL 2783555, at *4 (S.D.N.Y. Sep. 30, 2025) (citation omitted). Under the *Wagoner* rule, Plaintiff lacks "standing to even bring [such] a claim that would be barred by *in pari delicto*." *Picard v. HSBC Bank PLC*, 454 B.R. 25, 29 (S.D.N.Y. 2011). Plaintiff's Terraform and LFG claims must be dismissed because "(1) as a direct result of his own actions, [Plaintiff] bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310–11 (1985). "Early resolution is appropriate where (as here) the outcome is plain on the face of the pleadings." *In re Bernard L. Madoff Inv. Sec.*, 721 F.3d 54, 65 (2d Cir. 2013).[15]

---

[14]    The Complaint's pleading failures regarding loss causation also defeat Plaintiff's unjust enrichment claims. *See Manchanda v. Google*, 2016 WL 6806250, at *6 (S.D.N.Y. Nov. 16, 2016) (dismissing plaintiff's unjust enrichment claim because plaintiff "fails to plead any clear relationship between Defendants' profits and his injury").

[15]    On a motion to dismiss, the Court may consider the pleadings as well as any matters of which judicial notice may be taken. *See UCAR Int'l Inc. v. Union Carbide Corp.*, 119 F. App'x

*First*, Terraform and LFG bear the bulk of the responsibility for the violations that caused investor losses. *See* Compl. ¶ 5 (asserting Plaintiff brought claims "for the benefit of those who lost their investments in the Terraform collapse"). Terraform and Do Kwon have been found civilly liable for securities fraud and agreed to pay $4.5 billion to harmed investors, and Do Kwon pleaded guilty to conspiracy and wire fraud for fraudulently propping up UST and LUNA and was sentenced to 15 years in federal prison. These prior adjudications indisputably affirm that Terraform "itself participated in the fraud" Plaintiff purportedly seeks to redress here. *Trott*, 2025 WL 2783555, at *4.

*Second*, dismissing Plaintiff's claims would not interfere with the effective enforcement of the securities laws, which have already been effectively enforced against Terraform and Do Kwon. *See Bateman*, 472 U.S. at 315–16. The purpose of the Exchange Act and CEA is to protect investors, not to allow perpetrators of massive fraud to bring claims against third parties who had nothing to do with the fraud. *See, e.g.*, *Ross v. Bolton*, 904 F.2d 819, 824–25 (2d Cir. 1990).

*Finally*, the *Wagoner* rule "deprives the trustee of standing without regard to the relative degree of fault by the debtor's management or the third party." *In re Grumman Olson Indus., Inc.*, 329 B.R. 411, 424 n.5 (S.D.N.Y. 2005). Thus, Plaintiff "may not assert claims against third parties for participating in a fraud that [Terraform and LFG] orchestrated." *In re Bernard L. Madoff Inv. Sec.*, 721 F.3d at 64.

## V. Plaintiff's Exchange Act and CEA Claims Are Impermissibly Extraterritorial

Plaintiff's Exchange Act and CEA claims also fail because neither statute applies extraterritorially and Plaintiff fails to allege that the trades in question took place in the U.S. *See*

---

300, 302 (2d Cir. 2004) (judicially noticing Plaintiff's "admissions in its plea to criminal [] violations" to establish *in pari delicto*); *Hirsch*, 72 F.3d at 1095 (judicially noticing that the debtors "pled guilty to multiple felonies").

*Morrison v. Nat'l Australia Bank Ltd*., 561 U.S. 247, 265 (2010); *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 70 (2d Cir. 2012) (a complaint that "does not adequately allege the existence of domestic securities transactions" must be dismissed).  Plaintiff alleges no facts concerning, for example, "the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money," as required to survive a motion to dismiss.  *Absolute Activist,* 677 F.3d at 70.  Further, Plaintiff's passing allusions to the U.S. fail under *Morrison*. Plaintiff acknowledges that LFG was established as a "Singaporean Public Company," Compl. ¶ 15, and the Individual Claimants are predominantly located outside of the U.S.  Compl. Ex. C. And the allegation that Defendants are based in New York does not create domesticity because binding precedent holds that the transacting party's "citizenship or residency does not affect where a transaction occurs." *Absolute Activist*, 677 F.3d at 69 (citation omitted).  Plaintiff also makes the boilerplate allegations that Defendants used "the U.S. mail . . . and the facilities of a national securities exchange," Compl. ¶ 10, but there is no indication as to which digital asset trading platform Plaintiff possibly contends could be a "national securities exchange," *id.*, and this conclusory allegation is insufficient to survive a motion to dismiss.[16]  *Absolute Activist*, 677 F.3d at 70.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss all claims against them with prejudice.

---

[16]    Plaintiff alleges the May 7 Sales took place on the digital asset trading platforms Binance and Curve, *see* Compl. ¶ 120, but does not and cannot allege that either platform is located in the U.S.  And, despite having Defendants' trading data, Plaintiff alleges nothing whatsoever about the specific platforms on which the May 8–13 Trades took place.

Dated: April 23, 2026
New York, New York

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By: */s/ Rishi N. Zutshi*

Rishi N. Zutshi
Samuel Levander
Thomas Q. Lynch
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999
rzutshi@cgsh.com
slevander@cgsh.com
tlynch@cgsh.com

Matthew Solomon
Katherine McGuire
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: 202-974-1500
F: 202-974-1999
msolomon@cgsh.com
kmcguire@cgsh.com

*Counsel for Defendants Jane Street Group, LLC; Jane Street Capital LLC; Bryce Pratt; Robert Granieri; and Michael Huang*

-32-

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the page limitations set forth in the April 8, 2026 Joint Stipulation and Order to Set Briefing Schedule and Page Limits for Defendants' Motion to Dismiss and the formatting rules contained in Rule 7.1(c) of the Local Rules of the United States District Court for the Southern and Eastern District of New York.  Excluding the parts of the document exempted by those rules, it contains 10,470 words, as calculated by Microsoft Word.

Dated: April 23, 2026
New York, New York

_/s/ Rishi N. Zutshi_
Rishi N. Zutshi