**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Todd R. Snyder, as Plan Administrator for the Terraform Labs Pte. Ltd., et al., each Post Effective-Date Debtor, and the Wind Down Trust,<br><br>Plaintiff,<br><br>v.<br><br>Jane Street Group, LLC; Jane Street Capital, LLC; Bryce Pratt; Robert Granieri; Michael Huang,<br><br>Defendants. | Case No.: 1:26-cv-01536-DEH<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 3

I. The Remaining Insider Trading Claims (Counts 1, 3, 4, 6, 7, and 9) Should Be Dismissed .......... 3

A. Plaintiff's May 7 Insider Trading Theory Fails .......... 3

B. Plaintiff's May 8–13 Insider Trading Theory Also Fails .......... 7

C. Plaintiff Cannot Plead Reliance or Misappropriation on Behalf of Terraform (Counts 1 and 4) .......... 10

D. Plaintiff's Insider Trading Claims Fail to the Extent They Do Not Allege Contemporaneous Trading .......... 11

II. Terraform's Claims Are Barred by Terraform's Own Fraud (Counts 1, 4, 7, and 16) .......... 11

III. Plaintiff's Insider Trading Claims Are Impermissibly Extraterritorial (Counts 1, 3, 4, 6, 7, and 9) .......... 13

IV. Plaintiff's Unjust Enrichment Claims Fail (Counts 16 and 18) .......... 14

V. Plaintiff's Abandoned Claims Should Be Dismissed with Prejudice (Counts 2, 5, 8, 10–15, and 17) .......... 15

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012)....13, 14

*Abuhamdan v. Blyth, Inc.*,
9 F. Supp. 3d 175 (D. Conn. 2014)....6–7

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
663 F. Supp. 3d 334 (S.D.N.Y. 2023)....6

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022)....11

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)....13

*Brodzinsky v. FrontPoint Partner LLC*,
2012 WL 1468507 (D. Conn. Apr. 26, 2012)....11

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)....14

*Cooper v. Anheuser-Busch, LLC*,
553 F. Supp. 3d 83 (S.D.N.Y. 2021)....14

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (2012)....14

*Dawson v. Beebe*,
2025 WL 2402289 (S.D.N.Y. Aug. 19, 2025)....15

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)....6

*Elkind v. Liggett & Myers*,
635 F.2d 156 (2d Cir. 1980)....6–7

*Gordon v. Sonar Cap. Mgmt. LLC*,
962 F. Supp. 2d 525 (S.D.N.Y. 2013)....4

*In re Archegos 20A Litig.*,
156 F.4th 108 (2d Cir. 2025)....3, 4, 5, 8

*In re Bernard L. Madoff Inv. Sec. LLC*,
721 F.3d 54 (2d Cir. 2013)....12

*In re Ivan F. Boesky Sec. Litig.*,
36 F.3d 255 (2d Cir. 1994)....10

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008)....................11

*In re Terraform Labs PTE. Ltd.*,
No. 24-10070-BLS (Bankr. D. Del. Sep. 18, 2024), Dkt. No. 717....................4

*Kaplan v. S.A.C. Cap. Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015)....................10

*Kaplan v. S.A.C. Cap. Advisors*,
40 F. Supp. 3d 332 (S.D.N.Y. 2014)....................6–7

*Lattanzio v. Deloitte & Touche LLP*,
476 F.3d 147 (2d Cir. 2007)....................10

*Manchanda v. Google*,
2016 WL 6806250 (S.D.N.Y. Nov. 16, 2016)....................15

*Mandarin Trading Ltd. v. Wildenstein*,
16 N.Y.3d 173 (2011)....................15

*Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*,
603 F.3d 144 (2d Cir. 2010)....................6

*Peltz v. SHB Commodities, Inc.*,
115 F.3d 1082 (2d Cir. 1997)....................12

*Picard v. HSBC Bank PLC*,
454 B.R. 25 (S.D.N.Y. 2011)....................12

*SEC v. Brewer*,
2025 WL 1548765 (S.D.N.Y. May 30, 2025)....................9

*SEC v. Conradt*,
947 F. Supp. 2d 406 (S.D.N.Y. 2013)....................9

*SEC v. Lund*,
570 F. Supp. 1397 (C.D. Cal. 1983)....................9

*SEC v. McGee*,
895 F. Supp. 2d 669 (E.D. Pa. 2012)....................9

*SEC v. Obus*,
693 F.3d 276 (2d Cir. 2012)....................6

*SEC v. One or More Unknown Traders in Sec. of Onyx Pharms., Inc.*,
296 F.R.D. 241 (S.D.N.Y. 2013)....................4

*SEC v. Suman*,
684 F. Supp. 2d 378 (S.D.N.Y. 2010)....................9

*SEC v. Tome*,
638 F. Supp. 596 (S.D.N.Y. 1986)....................9

*Shearson Lehman Hutton, Inc. v. Wagoner*,
944 F.2d 114 (2d Cir. 1991)....................12, 13

*Trott v. Deutsche Bank, AG*,
2025 WL 2783555 (S.D.N.Y. Sep. 30, 2025)....................12–13

*United States v. Chestman*,
947 F.2d 551 (2d Cir. 1991)....................8

*United States v. Chow*,
993 F.3d 125 (2d Cir. 2021)....................9

*United States v. Falcone*,
257 F.3d 226 (2d Cir. 2001)....................9

*United States v. Kosinski*,
976 F.3d 135 (2d Cir. 2020)....................9

*United States v. McPhail*,
831 F.3d 1 (1st Cir. 2016)....................9

*Veleron Holding, B.V. v. Morgan Stanley*,
117 F. Supp. 3d 404 (S.D.N.Y. 2015)....................8

*Wargo v. Hillshire Brands Co.*,
599 F. Supp. 3d 164 (S.D.N.Y. 2022)....................14

*Williams v. Binance*,
96 F.4th 129 (2d Cir. 2024) ....................13–14, 14

*Wilson v. Comtech Telecomms. Corp.*,
648 F.2d 88 (2d Cir. 1981)....................11

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998)....................5, 7–8, 10

*Wyse v. Metro. Com. Bank*,
2025 WL 2208161 (S.D.N.Y. Aug. 4, 2025)....................4–5

**Rules and Statutes**

15 U.S.C. § 78t-1(a)....................11

15 U.S.C. § 78u–4(b)(4) ....................6

Fed. R. Civ. P. 9(b) ....................4, 5

**Other Authorities**

Restatement (Third) of Restitution and Unjust Enrichment § 63 (A.L.I. 2011)....................15

## PRELIMINARY STATEMENT

Plaintiff's Opposition confirms the Complaint overreached from the start in trying to blame Terraform's collapse on Jane Street. The Motion identified fatal pleading defects in all eighteen claims. The Opposition's response is telling: Plaintiff abandons ten claims outright and invents new theories to try to sustain the rest.[1] But the Complaint still fails as a matter of law to plead the remaining six Exchange Act and two unjust enrichment claims. More than that, the Complaint and the documents it incorporates show exactly why Jane Street traded: Jane Street traders were reacting as Terraform's fraud unraveled in plain, public view. And the Opposition admits it was Terraform's own fraud that caused the collapse. Opp'n at 2–3. There is nothing left of this case.

Start with the May 7 Sales.[2] The Complaint attempts to tie Jane Street's UST sales to a single allegation that Jane Street knew Terraform would implement a previously announced transfer of UST from the Curve 3pool at exactly 5:44pm on May 7. Compl. ¶ 116. But the Complaint cites no communication disclosing those details—or anything about the Curve 3pool transfer at all—to Jane Street. It speculates "on information and belief" that Jane Street learned the timing through unspecified "back-channel communications," and relies heavily on the supposedly suspicious timing of Jane Street's sales. *Id.* ¶¶ 4, 107–17, 121, 163. That timing debunks Plaintiff's theory: Jane Street's largest sale happened *after* the transfer was public. *Id.* ¶ 114. And documents incorporated in the Complaint show that Jane Street sold UST because of public market signals. Rather than defend the Complaint as pleaded, the Opposition advances a new, unpleaded materiality theory—that the transfer reduced UST's liquidity and made it vulnerable. Opp'n at 5–6, 15–16. That theory still fails to overcome the Complaint's own

---

[1] Specifically, Plaintiff has abandoned the claims previously asserted on behalf of LFG (counts 2, 5, 8, 11, 14, and 17) and all CEA claims (counts 10–15). *See infra* V.

[2] Undefined capitalized terms have the same meaning as in the Motion.

admission that the transfer was previously announced, and the fact that the announcement had no meaningful impact on UST or LUNA prices. Plaintiff cannot plausibly allege that the timing of the Curve 3pool transition—the announcement of which had no market impact—was material or that its non-disclosure caused the losses Plaintiff seeks to recover.

The May 8–13 theory also fails at the pleading stage. The Complaint alleges that Jump was Terraform's temporary insider. Compl. ¶¶ 230–32, 257–59, 284–92. The Motion showed that theory failed because Plaintiff did not plead that Jump breached a duty to Terraform, or that Jane Street owed any duty to Jump. So the Opposition pivots again, now arguing that *Jane Street* became Terraform's temporary insider by participating in "bailout discussions." Opp'n at 12–13. But the Complaint does not allege that Jane Street agreed to serve Terraform's interests or otherwise became Terraform's fiduciary. That omission is fatal because duty is the element that separates lawful trading from insider trading. Loss causation is missing too. By the time Jane Street allegedly received the purported MNPI, the market correction of UST and LUNA prices—previously inflated by Terraform's fraud—was already well underway. And the trading by Jane Street at issue also began *before* the bailout discussions—yet another flaw in the Complaint's logic that the Opposition does not even try to defend as pleaded.

Plaintiff's effort to salvage his reliance theory fares no better. The Complaint sought damages on the theory that Terraform was disadvantaged as a market participant. Compl. ¶¶ 165, 177, 213. The Motion showed that Terraform could not have relied on Jane Street's concealment because Terraform already knew all the information that Jane Street allegedly traded on. So Plaintiff now says Defendants misunderstood his claim: Terraform was not deceived when it traded, but was injured because Jane Street stole Terraform's information. Opp'n at 25. That is

not what the Complaint pleaded. In any event, Plaintiff's new theory of liability also fails because the only corporate objective supposedly frustrated was Terraform's effort to conceal its fraud.

Plaintiff's confirmation that Terraform's fraud caused its collapse also bars Terraform's claims. Under the *Wagoner* rule, an estate representative standing in the debtor's shoes cannot recover for injuries caused by the debtor's own fraud. And Plaintiff's insider trading claims also fail because they are impermissibly extraterritorial under binding Second Circuit precedent. Finally, his unjust enrichment claims must be dismissed because they are premised on the same failed theory as his insider trading claims. The Complaint should be dismissed with prejudice.

## ARGUMENT

### I. The Remaining Insider Trading Claims (Counts 1, 3, 4, 6, 7, and 9) Should Be Dismissed

#### A. Plaintiff's May 7 Insider Trading Theory Fails

The May 7 theory fails because Plaintiff does not plausibly plead that: (1) Jane Street was tipped or knowingly possessed information about the Curve 3pool transfer; (2) this alleged information was material; or (3) nondisclosure of this alleged information caused losses.[3]

No Tip. Plaintiff pleads no particularized facts that Jane Street was tipped about the timing of the Curve 3pool transfer, or possessed information about it when it traded. Mot. at 13–16. Plaintiff says *Archegos* is irrelevant, Opp'n at 17, but it is dispositive binding precedent because there, as here, Plaintiff offered only "an entirely conjectural leap" rather than pleading the required "particular factual allegations regarding the tip[.]" *In re Archegos 20A Litig.*, 156 F.4th 108, 120 (2d Cir. 2025). Plaintiff's failure to plead any particulars about the supposed phantom tip is even

[3] Plaintiff incorrectly says that Defendants "effectively concede[d]" that Terraform employees violated their duties to Terraform and received a personal benefit, that Jane Street employees knew about such violation, and that UST and LUNA are securities. Opp'n at 20, 30 n.14. Defendants reserve all defenses, but are not moving on these grounds at this time.

more glaring because, unlike plaintiffs in *Archegos*, he had access to extensive pre-suit discovery—including Terraform data (containing the communications of employees who could be the potential tipper), discovery from prior Terraform litigation, and 79,198 pages of documents that Jane Street produced to the SEC.[4] Yet *not one* of the communications cited in the Complaint is about the Curve 3pool transfer. *See* Compl. ¶¶ 67–98 (communications about investment opportunities, Anchor, Maximal Extractable Value, Alameda deposits, Genesis transactions, and general Terraform metrics).[5] Simply pointing to other communications, *see* Opp'n at 14, does not satisfy Plaintiff's burden to plead a specific tip. *See Gordon v. Sonar Cap. Mgmt. LLC*, 962 F. Supp. 2d 525, 529 (S.D.N.Y. 2013) (allegations that tipper and tippee "spoke on at least twenty occasions" and trading "coincided with those communications" were "insufficient").[6]

Plaintiff further undermines his own theory by alleging that Jane Street made its largest UST sale *after* the Curve 3pool transfer. Compl. ¶ 114. The Opposition offers no plausible reason Jane Street would have done so if it knew the timing of the transfer in advance. Plaintiff then invokes a supposed "relaxed" Rule 9(b) standard to save his deficient claims. Opp'n at 10. But that standard only applies where the alleged tip was "known only to the defendant and the tipper," which is not the case here. *SEC v. One or More Unknown Traders in Sec. of Onyx Pharms., Inc.*, 296 F.R.D. 241, 248 (S.D.N.Y. 2013). Instead, Rule 9(b)'s heightened pleading requirements apply because Plaintiff "is well versed in the underlying events and evidence" and "extensively

---

4 *See, e.g.*, Second Amended Chapter 11 Plan § 5.3(h), *In re Terraform Labs PTE. Ltd.*, No. 24-10070-BLS (Bankr. D. Del. Sep. 18, 2024), Dkt. No. 717 (transferring all of the Debtors' assets to the Wind Down Trust).

5 Nor does a Terraform employee's generic comment about providing "somewhat useful info" plausibly suggest that this "info" related to the Curve 3pool transfer. *See* Opp'n at 7.

6 Plaintiff also contends Jane Street "omit[ted] . . . controlling authority" that "trading while in knowing possession of inside information" establishes that trades were based on it. Opp'n at 16–17. This is yet more misdirection. This law has no bearing because Plaintiff has failed to plausibly allege that Jane Street was tipped and knowingly possessed the alleged MNPI at all.

cites" the very communications that would contain a tip if one existed. *Wyse v. Metro. Com. Bank*, 2025 WL 2208161, at *10 (S.D.N.Y. Aug. 4, 2025). In any event, Plaintiff's allegations are self-defeating for the reasons noted above and would not satisfy even a "relaxed" Rule 9(b) standard.

Finally, while Jane Street has no burden to establish a legitimate alternative reason for its trading, Plaintiff's own Complaint and incorporated documents do just that. They set forth not only a plausible but a *contemporaneously documented* non-insider explanation for Jane Street's sales: traders were "nervous about depeg risk" because they "woke up to a LUNA price of $74" and witnessed "possibly $80m withdrawn from anchor" on May 7. Lynch Decl., Dkt. No. 30, Exs. C, D; *see also* Mot. at 7–8, 15. Indeed, when the Jane Street trader who noted these negative market signals on May 7 and began unstaking UST was asked whether he "heard" "any news" that informed his analysis, he responded "no." Lynch Decl., Dkt. No. 30, Ex. C; *see id.* Ex. D (same). That contemporaneous record defeats any inference that Jane Street possessed non-public information about the Curve 3pool transfer. *See Archegos*, 156 F.4th at 120.

<u>No Materiality</u>. The Court need not reach materiality if it dismisses for failure to plead a tip. But materiality is an independent ground for dismissal. Plaintiff's Opposition shows why. Rather than defend the materiality of the timing of an already-announced curve pool transition based on his actual pleadings, Plaintiff advances for the first time in his Opposition a new liquidity-depth and depeg-vulnerability theory that appears nowhere in the Complaint. *Compare* Compl. ¶¶ 103, 116, *with* Opp'n at 6, 15–16. The Court should disregard that new theory because Plaintiff cannot "amend [his] complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). But it does not matter: no amount of constructive amendment can make the information plausibly material. For Jane Street's alleged 85 million UST sale *after* the Curve 3pool withdrawal, Plaintiff identifies no non-public

information at all: the market could see Terraform's large withdrawal before that sale and could connect the withdrawal to Terraform through Do Kwon's earlier public announcement that it would occur. *See* Compl. ¶¶ 26, 29, 86, 103, 114. For the earlier trades, it is undisputed that the public announcement of the curve pool transition did not move UST's price, *see* Mot. at 6 n.1, and Plaintiff does not plead facts showing that Jane Street knew the Curve 3pool transfer's timing was material. *SEC v. Obus*, 693 F.3d 276, 287 (2d Cir. 2012) (tippee "must know that the tipped information is material").

No Loss Causation. Plaintiff also fails to plead loss causation—a "causal connection between the content of the alleged [MNPI] and the harm actually suffered." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 663 F. Supp. 3d 334, 356, 378 (S.D.N.Y. 2023); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). For the May 7 Sales, the alleged MNPI is the timing of the Curve 3pool transfer. Plaintiff does not plead that this alleged MNPI revealed Terraform's fraud or the risk of Terraform's collapse, that it caused a price decline, or that its disclosure would have prevented any trading losses. Instead, the Complaint makes clear that Plaintiff seeks to recover losses flowing from Terraform's collapse, which Plaintiff now admits was caused by Terraform's fraud. Opp'n at 2–3 ("Terraform Commits Fraud and Collapses"); *see also id.* at 1, 3 (similar).

Plaintiff cannot avoid pleading this required element by saying loss causation is "presumed" for Section 20A claims, Opp'n at 18, because it is not. *Altimeo*, 663 F. Supp. 3d at 378–79 (Section 20A plaintiff "must adequately allege . . . loss causation"); *see also* 15 U.S.C. § 78u–4(b)(4).[7] Nor do Plaintiff's citations to *Kaplan* and *Elkind* help him. Those cases addressed

---

[7] Plaintiff also suggests loss causation is not required because he alleges a "scheme" instead of a "misrepresentation." Opp'n at 14 n.8. But "loss causation is also a necessary element of a deceptive scheme claim." *Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175, 212 (D. Conn. 2014); *see Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 151 (2d Cir. 2010).

damages, not loss causation, where the omission of MNPI caused losses and other factors "compounded" them. *Kaplan v. S.A.C. Cap. Advisors*, 40 F. Supp. 3d 332, 339–40 (S.D.N.Y. 2014); *Elkind v. Liggett & Myers*, 635 F.2d 156, 161, 167, 173 n.12 (2d Cir. 1980).[8]

### B. Plaintiff's May 8–13 Insider Trading Theory Also Fails

The May 8–13 theory first fails on timing. The Complaint alleges that Jane Street began establishing its short position on May 8, *before* it allegedly learned bailout-related information from Jump on the evening of May 9. *See* Mot. at 18–19; Compl. ¶¶ 122–56. The Opposition does not defend that pleaded theory. It retreats to defending trades on "May 9, 10, and 11." Opp'n at 17. A trade made before Jane Street allegedly received the relevant MNPI cannot be insider trading. Claims based on trades before the 5:45pm call on May 9 must be dismissed.

The post-call theory (trades after 5:45pm on May 9) fails for lack of duty. First, any alleged duty that Terraform's Head of Research owed to Terraform is irrelevant as to the May 9–13 trades. Plaintiff does not allege that Terraform's Head of Research provided Jane Street with information about Jump's willingness to participate in a bailout that allegedly motivated these trades. Compl. ¶ 176; Opp'n at 7–8. Second, Plaintiff's attempt to introduce a new temporary insider duty theory in his Opposition is impermissible and meritless. The Complaint attempted to plead that *Jump* was Terraform's temporary insider. Compl. ¶¶ 230, 257, 284. The Motion showed why that theory failed: Plaintiff did not plead that Jump breached a duty to Terraform, or that Jane Street owed any duty to Jump. Mot. at 19–21. The Opposition responds by changing theories. Plaintiff now says *Jane Street* became Terraform's temporary insider, which the Complaint does not allege.

---

[8] Plaintiff lists various communications between Terraform and Jane Street employees in the weeks and months before May 7, but he does not even attempt to plead how any of this information could have caused anyone's losses on May 7 or was material. *See* Opp'n at 4–7. His only response is to ask why Jane Street traders "ask[ed] Pratt to obtain it." *Id.* The Complaint makes clear that the earlier communications were part of Jane Street's diligence while *buying* UST before May 7, not selling it on May 7. *See* Mot. at 17–18.

Opp'n at 12–13, 19–23 & n.11; *see Wright*, 152 F.3d at 178 (rejecting party's attempt to raise unpleaded allegation in opposition brief). That shift is substantive. Duty is the element that makes insider trading deceptive. In any event, there is no duty no matter how Plaintiff frames his theory.

Plaintiff's new "temporary insider" theory is premised on the assertion that Jane Street "assumed" a duty of trust and confidence by participating in a single bailout discussion with Jump. Opp'n at 19–22. *Archegos* precludes this theory. Here, as in *Archegos*, the Complaint does not allege that Jane Street accepted a duty of confidentiality to Terraform, "entered into an agreement with [Terraform] to act in its best interest," or "agreed to serve as [Terraform's] fiduciar[y]." 156 F.4th at 119. As *Archegos* makes clear, "*acceptance* of such a duty is crucial because 'a fiduciary duty cannot be imposed unilaterally by entrusting a person with confidential information.'" *Id.* at 119 (emphasis in original); *see also United States v. Chestman*, 947 F.2d 551, 567 (2d Cir. 1991). Plaintiff's lead authority confirms this point. *Veleron* rejected the proposition that "the very fact [plaintiff] was in negotiations with [defendant] gives rise to a 10b duty." *Veleron Holding, B.V. v. Morgan Stanley*, 117 F. Supp. 3d 404, 439 (S.D.N.Y. 2015). The *Veleron* court denied summary judgment on the duty issue based on triable issues of fact, including evidence of industry practice and defendant's status as a disposal-agent. *Id.* at 439–440, 447, 450–51. Plaintiff pleads neither here, and the Opposition is left to speculate about what Jump "would have expected and demanded" and what Jane Street "would have agreed." Opp'n at 22. Plaintiff's guesswork does not plead a duty absent facts plausibly alleging one. *Id.*

Nor could the Complaint plausibly plead such a duty: a trading firm asked at arm's length to consider funding a collapsing enterprise does not silently accept fiduciary obligations absent a specific agreement to do so. Similarly, Jane Street's voluntary internal discussions of an "informal[]" information wall cannot create a duty the Complaint otherwise fails to plead. Opp'n

at 9, 13 & n.7, 22. Plaintiff's remaining cases are inapposite. *Id.* at 13, 20–21. In the context of an arm's-length professional relationship, such as the one alleged here, courts have required either an explicit confidentiality agreement or a relationship carrying inherent duties of confidence—such as that of an attorney, accountant, or consultant—to establish a duty of confidentiality.[9] Plaintiff does not allege any such explicit agreement or professional duty here, and does not even attempt to plead the type of close personal relationship that courts find gives rise to a duty of confidentiality.[10]

The Opposition's new argument that Jump was acting as Terraform's "agent" or "conduit," Opp'n at 2, 20 n.11, does not help Plaintiff because he still has not pleaded that Jane Street accepted a duty to Terraform or breached one by declining to participate in a bailout that (as has now been revealed) was meant to cover up Terraform's fraud. And even if the Court somehow found Plaintiff plausibly pled Jane Street owed a duty to Terraform, the May 8–13 claims still fail. The alleged MNPI was Jump's own potential willingness to contribute funds to the bailout: that information belonged to Jump, not Terraform, which did not even join the call. *See* Mot. at 20.

As with the May 7 Sales, loss causation independently requires dismissal. By the evening of May 9, UST had already "declined sharply" and LUNA had fallen from approximately $80 to

---

9 *Compare* Opp'n at 13, 20–21, *with United States v. Chow*, 993 F.3d 125, 138–39 (2d Cir. 2021) (nondisclosure agreements); *United States v. Kosinski*, 976 F.3d 135, 144–47 (2d Cir. 2020) (contract with confidentiality provision); *United States v. Falcone*, 257 F.3d 226, 234–35 (2d Cir. 2001) (confidentiality policy periodically communicated to third parties); *SEC v. Tome*, 638 F. Supp. 596, 603–04, 621–22 (S.D.N.Y. 1986) (financial advisors and consultants); *SEC v. Brewer*, 2025 WL 1548765, at *11–12 (S.D.N.Y. May 30, 2025) (express confidentiality agreement); *SEC v. Suman*, 684 F. Supp. 2d 378, 389 (S.D.N.Y. 2010) (same).

10 *Compare* Opp'n at 20–21, *with SEC v. Conradt*, 947 F. Supp. 2d 406, 408 (S.D.N.Y. 2013) (pattern of sharing sensitive personal and professional confidences); *United States v. McPhail*, 831 F.3d 1, 7 (1st Cir. 2016) ("confidential relationship" between "two buddies"); *SEC v. McGee*, 895 F. Supp. 2d 669, 674, 682 (E.D. Pa. 2012) (members of Alcoholics Anonymous who "formed a close personal relationship"); *SEC v. Lund*, 570 F. Supp. 1397, 1403 (C.D. Cal. 1983) ("long time friends and business associates").

$30. Compl. ¶¶ 122, 133. The alleged bailout information came *after* Terraform's fraud had begun to unravel and the collapse was underway. Plaintiff cannot attribute those losses to nondisclosure of later bailout information. *See Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 157–58 (2d Cir. 2007) (accountant not proximate cause of loss when principal committed fraud).

### C. Plaintiff Cannot Plead Reliance or Misappropriation on Behalf of Terraform (Counts 1 and 4)

Terraform's insider trading claims fail for the additional, independent reason that Plaintiff cannot plead reliance. The Complaint pleaded Terraform's Section 20A and Section 10(b) claims as classical insider trading claims: Terraform allegedly traded contemporaneously with Jane Street and was damaged because Jane Street used information "that its competing traders did not have." Compl. ¶ 177; *see also, e.g.*, *id.* ¶¶ 14, 165, 178, 213. That theory fails because Terraform already knew the information allegedly withheld from the market. Mot. at 22; *Kaplan v. S.A.C. Cap. Advisors, L.P*, 311 F.R.D. 373, 380 (S.D.N.Y. 2015) (reliance required for classical theory). The Opposition does not answer that point. It instead says Jane Street "misunderstands" Plaintiff's theory and that Terraform seeks recovery because Jane Street "stole" its information. Opp'n at 25.

First of all, that is not what the Complaint pleaded, and it therefore fails on that ground alone. *See Wright*, 152 F.3d at 178. But it does not matter: the new theory fails on its own terms. Plaintiff cannot establish misappropriation liability because Terraform had no "legitimate purpose for keeping the information secret." *In re Ivan F. Boesky Sec. Litig*., 36 F.3d 255, 263 (2d Cir. 1994). The only corporate "purpose" Plaintiff identifies was Terraform's "sale of its tokens to raise money for a bail-out" on May 9. Opp'n at 26. But the Opposition concedes that Terraform's real goal was—unbeknownst to Jane Street and other investors—to conceal its massive fraud (*i.e.*, that "the Terra Protocol did not work"). Opp'n at 2–3. Plaintiff identifies no legitimate corporate purpose that Jane Street allegedly frustrated.

### D. Plaintiff's Insider Trading Claims Fail to the Extent They Do Not Allege Contemporaneous Trading

Sections 20A and 10(b) permit recovery only for persons who traded "contemporaneously with the purchase or sale of securities that is the subject of such violation." 15 U.S.C. § 78t-1(a); *see Wilson v. Comtech Telecomms. Corp*., 648 F.2d 88, 94 (2d Cir. 1981). The Complaint alleges only that the Individual Claimants traded from May 7–31. Compl. ¶ 18. It does not allege which Individual Claimant traded when, in which token, or on which platform. A window spanning nearly three weeks past Defendants' last alleged trade and more than three weeks after the depeg is not "contemporaneous." *See* Mot. at 23–24; *In re Take-Two Interactive Sec. Litig*., 551 F. Supp. 2d 247, 311 n.51 (S.D.N.Y. 2008) (covered trading "usually limited to a few days"). The Opposition does not cite any law supporting its overbroad and generic allegations of contemporaneousness. Instead, it argues that contemporaneousness is measured by "how long the market took to digest the disclosed inside information." Opp'n at 19. But that is not the law. Sections 20A and 10(b) measure contemporaneousness against the insider's trades, not how long the market took to absorb information. *Wilson*, 648 F.2d at 94. That rule applies with particular force in 24/7 crypto markets, where trades settle instantaneously. *See Brodzinsky v. FrontPoint Partner LLC*, 2012 WL 1468507, at *5 (D. Conn. Apr. 26, 2012) ("After an insider's sale settles, other traders are no longer in the market with that insider and are not harmed.").[11]

## II. Terraform's Claims Are Barred by Terraform's Own Fraud (Counts 1, 4, 7, and 16)

Plaintiff's Terraform claims are independently barred by the *Wagoner* rule. Plaintiff stands in Terraform's shoes and seeks recovery for losses caused by Terraform's collapse. But, again, Plaintiff admits that Terraform's own "massive securities fraud" was responsible for Terraform's

---

[11] With no Section 10(b) claim, Plaintiff's derivative Section 20A and 20(a) claims fail too. *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 356 (2d Cir. 2022).

"exponential growth and ultimate collapse." Opp'n at 3. That concession defeats any attempt to recover from Jane Street on Terraform's behalf for the same collapse.

Plaintiff tries to evade *Wagoner* by arguing that Jane Street's alleged insider trading was a "distinct" fraud. Opp'n at 26–27. That argument fails because *Wagoner*'s prohibition does not require that the third party's alleged wrong be "identical [in] nature" to the debtor's fraud. *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1091 (2d Cir. 1997) (*in pari delicto* application); *see Picard v. HSBC Bank PLC*, 454 B.R. 25, 29 (S.D.N.Y. 2011) (under *Wagoner*, Plaintiff lacks "standing to even bring a claim that would be barred by *in pari delicto*"). Indeed, the Second Circuit has held that claims may be barred even for "qualitatively different" wrongs. *Peltz*, 115 F.3d at 1091. The dispositive point is that Plaintiff is barred from suing to recover for a wrong "that [the debtor] orchestrated." *In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54, 63–64 (2d Cir. 2013). And here, Plaintiff seeks to recover for damage that is inseparable from Terraform's own fraud. *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117–20 (2d Cir. 1991).

The Complaint makes that plain by repeatedly alleging that Jane Street "contributed" to Terraform's collapse and seeking recovery for losses caused by that collapse. *See, e.g.*, Compl. ¶¶ 1–3, 5, 12, 120–22, 163, 370; *see also* Opp'n at 2. Absent Terraform's fraud, there would have been no collapse-related losses to recover. Indeed, Terraform's purchases in May 2022 were part of its effort to conceal its fraud. *See* Compl. ¶¶ 14, 42, 178; Opp'n at 2–3, 26.[12] Plaintiff cannot recast Terraform's losses as separate injuries caused by Jane Street. He therefore lacks standing to sue Defendants for the fraud Terraform and Kwon committed. *See Trott v.*

---

[12] *See* Lynch Decl., Dkt. No. 30, Ex. I at 139 (citing Kwon's "infamous message 'steady lads—deploying more capital'" as "lull[ing]" investors "to hold on to their UST positions during the death spiral").

*Deutsche Bank, AG*, 2025 WL 2783555, at *4–7 (S.D.N.Y. Sep. 30, 2025) (Ho, J.).[13]

Plaintiff's effort to analogize to the churning claim that survived in *Wagoner* does not work. Opp'n at 26–27. That claim survived because—unlike the breach of fiduciary duty claim premised on the defendant aiding and abetting the debtor's principal's own "bad trades"—it alleged a distinct injury to the debtor's account that did not involve the debtor's principal at all. *See Wagoner*, 944 F.2d at 117–20. There is no comparable injury here that is separate from Terraform's self-induced collapse. All of the injuries for which Plaintiff attempts to recover are part of the same fraud-driven collapse. *See, e.g.*, Compl. ¶¶ 2, 5, 12, 20–22, 163, 370.

*Bateman Eichler* does not help Plaintiff. *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 311 (1985) (providing an exception to *in pari delicto* where it would "significantly interfere with the effective enforcement of the securities laws"). Terraform and Kwon have been ordered to pay $4.5 billion to investors and Kwon is serving a 15-year prison sentence. *See* Mot. at 11, 29; Opp'n at 3. Applying *Wagoner* does not immunize Jane Street because it does not preclude Plaintiff from separately asserting claims on behalf of the Individual Claimants. *Wagoner* prevents Terraform's estate from using this lawsuit to recover from Jane Street losses Terraform indisputably caused by its own fraudulent conduct.

## III. Plaintiff's Insider Trading Claims Are Impermissibly Extraterritorial (Counts 1, 3, 4, 6, 7, and 9)

On top of all the other pleading deficiencies, Plaintiff fails to plead domestic transactions. This is no "throwaway" as the Opposition asserts. Opp'n at 29. Plaintiff has the burden to plead domesticity. *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 70 (2d Cir. 2012). Unable to plead where irrevocable liability was incurred, Plaintiff relies on *Williams v.*

---

13 Plaintiff also alleges that Terraform traded while possessing MNPI that others lacked, which is exactly what he (wrongly) alleges Jane Street did. Compl. ¶¶ 14, 177–78.

*Binance*, 96 F.4th 129 (2d Cir. 2024), notes that the Complaint alleges "Jane Street traders sitting in New York traded on Binance," and says that is sufficient. Opp'n at 29–30. It is not. Allegations about Defendants' New York residency and that a Jane Street trader executed certain challenged trades do not sufficiently plead domesticity. *Absolute Activist* makes clear that residency and citizenship are not enough; there must be plausible allegations that irrevocable liability was incurred in the United States. 677 F.3d at 69; Mot. at 30. Here there is none.

The complaint in *Williams* illustrates this point: it alleged that relevant orders matched on U.S. servers, that Binance has no official location, that users entered Binance's Terms of Use and placed orders from the United States, and that orders became irrevocable when submitted from devices in the United States. *Williams*, 96 F.4th at 138–40. Plaintiff pleads none of that here. He also does not defend the domesticity of Jane Street's 85 million UST trade on Curve, Compl. ¶ 120, identify where Terraform or LFG traded, or allege where any of the predominantly foreign Individual Claimants traded. *See* Compl. Ex. A. These omissions require dismissal.[14]

## IV. Plaintiff's Unjust Enrichment Claims Fail (Counts 16 and 18)

Plaintiff's unjust enrichment claims are duplicative of his deficient securities claims and should be dismissed. *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 791 (2012). Whether unjust enrichment has distinct elements is irrelevant. Opp'n at 23–24; *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115–17 (S.D.N.Y. 2021) (collecting cases rejecting this standard). The test is whether the unjust enrichment claim "relies on the same factual allegations and same theory of liability," which it does. *Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 179 (S.D.N.Y. 2022). Additionally, Plaintiff does not plead the required "clear relationship" and causal nexus

---

[14] This Court's assessment of extraterritoriality is not "premature," as Plaintiff claims. Opp'n 29. Domesticity is a pleading requirement that courts routinely resolve on a motion to dismiss. *See, e.g.*, *Absolute Activist*, 677 F.3d at 70; *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 181 (2d Cir. 2014).

between Jane Street's profits and any injuries. *Manchanda v. Google*, 2016 WL 6806250, at *6 (S.D.N.Y. Nov. 16, 2016); Mot. at 28. Plaintiff cites no authority for his assertion that such nexus is "presumed" for the Individual Claimants. Opp'n at 24. And that argument also fails because Terraform's fraud caused the losses Plaintiff seeks to recover. *Supra* I.A–B.[15] Nor can Plaintiff save Terraform's claim by asserting that a corporation may recover for misappropriation absent injury. Opp'n at 28–29. The Restatement Plaintiff cites confirms that restitution "may be limited or denied because of the claimant's inequitable conduct," and Plaintiff cites no case permitting an issuer to recover for a collapse it caused. Restatement (Third) of Restitution and Unjust Enrichment § 63 (A.L.I. 2011); Opp'n at 28–29.

## V. Plaintiff's Abandoned Claims Should Be Dismissed with Prejudice (Counts 2, 5, 8, 10–15, and 17)

Plaintiff has expressly abandoned his claims on behalf of LFG and all of his CEA claims. Opp'n at 24 n.12, 30 n.14. His decision to abandon these claims confirms they cannot be cured. The LFG claims fail because Plaintiff does not dispute that LFG knew the information allegedly withheld from the market, foreclosing reliance, and Plaintiff does not allege Jane Street misappropriated LFG's information. Mot. at 22–23. The CEA claims fail because Plaintiff cannot plead artificial price, manipulative intent, or any of the other elements identified in the Motion. Mot. at 24–27. The Court should dismiss the abandoned claims with prejudice. *See, e.g.*, *Dawson v. Beebe*, 2025 WL 2402289, at *4 (S.D.N.Y. Aug. 19, 2025).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss all claims against them with prejudice.

15 The "connection between" the Individual Claimants and Jane Street is also "too attenuated" because Plaintiff does not identify any details of the Individual Claimants' trades. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011); *supra* I.D.

Dated: July 13, 2026
New York, New York

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By: */s/ Rishi N. Zutshi*

Rishi N. Zutshi
Samuel Levander
Thomas Q. Lynch
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999
rzutshi@cgsh.com
slevander@cgsh.com
tlynch@cgsh.com

Matthew Solomon
Katherine McGuire
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: 202-974-1500
F: 202-974-1999
msolomon@cgsh.com
kmcguire@cgsh.com

*Counsel for Defendants Jane Street Group, LLC; Jane Street Capital, LLC; Bryce Pratt; Robert Granieri; and Michael Huang*

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the page limitations set forth in the April 8, 2026 Joint Stipulation and Order to Set Briefing Schedule and Page Limits for Defendants' Motion to Dismiss and the formatting rules contained in Rules 7.1(b)–(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Excluding the parts of the document exempted by those rules, it contains 5,286 words, as calculated by Microsoft Word.

Dated: July 13, 2026
New York, New York

*/s/ Rishi N. Zutshi*
Rishi N. Zutshi